## LE BOEUF et al. v. DUPLANTIS.
### No. 1486.

Court of Appeal of Louisiana. First Circuit. June 29, 1935.

See, also, Domangue **v.** Duplantis (La. App.) 162 So. 596.

Harris Gagne, of Houma, for appellants.

Ellender & Ellender, of Houma, for appellee.

LE BLANC, Judge.

This is a suit brought by the heirs of Mrs. Beattie Le Boeuf, born Olympe Hebert, to have a sale of certain property situated in the parish of Terrebonne, to the defendant J. G. Duplantis, set aside in so far as it purported to convey her interest therein, on the ground that her signature appearing on the deed is a forgery.

In two companion suits brought at the same time by other alleged co-owners of the property, all of whom admittedly signed the same deed, the issue is one of fraud and misrepresentation, the plaintiffs in one of those suits alleging that they were duped and misled by the defendant, who represented to them that what they were signing was a trapping lease, and the plaintiff in the other suit averring that she was induced to sign the deed on the representation made to her that it was a receipt for the money which was being paid to her for a trapping lease.

The answers in all three suits is a denial of the charges of forgery and of fraud and misrepresentation as alleged, and from a judgment in each suit in favor of the defendant, the plaintiffs have appealed.

The deed that is involved in this contest appears to be a sale under private signature, later authenticated by one of the subscribing witnesses, on August 12, 1927. As appears from the certificate of clerk of court of Terrebonne parish, the same was filed for registry at 3 o'clock p. m., on August 12, 1927, and duly recorded in the conveyance records of that parish on the same day. The plaintiffs in this suit aver that they first became acquainted with the existence of this purported act of sale in the month of October, 1934.

The document, as appears from the photastatic copy filed in the record, is in typewritten form and bears the usual clauses comprised in an act of sale of real property. It purports to convey the rights, title, and interest of the parties selling, to J. G. Duplantis, the defendant, in the property therein described, for the price and sum of $55. It bears the following signatures in the order in which they are named: Santy Hebert (then a blank space for a signature), Vanolia Hebert Domangue, Gilbert Domangue, who signed by (x) mark; Bertha Hebert Domangue, Albert Domangue, Maggie Hebert, Olympe Hebert, Bettie Le Boeuf, J. G. Duplantis. On the left-hand side of the document, under the word "Witnesses," we find the signatures of Reuben Chauvin, Calvin Wurzlow, and Gilbert Domangue, the last-named again signing by (x) mark. Below all the signatures, there appears the following affidavit:

"Before me, the undersigned authority personally came and appeared, Mr. Gilbert Domangue, who after being sworn deposed and said that he was one of the witnesses who signed the above and foregoing act of sale; that all of said signatures were made in his presence and the said signatures are true and genuine so help him God.

his
"[Signed]   Gilbert x Domangue
mark

"Sworn to and subscribed before me on the 12th., day of August 1927.

"[Signed]   Calvin Wurzlow
"[Seal.]                    Notary Public"

Under the provisions of article 2242, R. C. C., an act under private signature "acknowledged by the party against whom it is adduced, *or legally held to be acknowledged,* has, between those who have subscribed it, and their heirs and assigns, the

same credit as an authentic act." (Italics ours.)

By the terms of Act No. 68 of 1914, a new method of acknowledgment of an act under private signature seems to have been provided, for we find upon reading that act, that "any *deed,* counter letter, power of attorney, declaration, contract, or other instrument, under private signature, *purporting* to be attested by two or more witnesses and accompanied by an affidavit of the vendor or grantor that the same was signed or executed by him, *or by an affidavit of one or more such witnesses,* made at or after the signing and execution of such deed, counter letter, or other instrument, and setting forth substantially that said instrument was signed or executed by the party or parties thereto in the presence of the affiant or affiants, shall be deemed, taken and accepted, prima facie, and without further proof, as being true and genuine, and shall be so received and accepted in evidence in the courts of Louisiana, without further proof." (Italics ours.) Section 1.

■ On its face, the document presently before the court bears all the earmarks of a deed duly acknowledged under the provisions of the statute just quoted. It is purported to be attested by three witnesses, and it is accompanied by the affidavit of one of such witnesses who declares, under oath, that the same was signed by the parties thereto in his presence. Under the statute, it has therefore to be deemed, taken, and accepted, prima facie and without further proof, as true and genuine and further it has to be received in evidence, without further proof.

■ Article 2236, R. C. C., provides that "the authentic act is full proof of the agreement contained in it, against the contracting parties *and their heirs or assigns,* unless it be declared *and proved a forgery.*" The deed which is here attacked, therefore, is full proof of the agreement contained in it, against the plaintiffs herein who are the heirs and assigns of their deceased mother, Olympe Hebert Le Boeuf, unless they can prove, as they have declared in their petition, that her signature appearing thereon is a forgery. (Italics ours.) The burden therefore is on them to make such proof.

■ In our opinion, the degree of proof required to set aside an authentic deed on the ground that a signature thereto has been forged, is greater than the ordinary preponderance of testimony required in ordinary civil cases. Charging one with forgery of a name to an act of sale is akin to charging him with crime, and although it may be that the same quality of proof required for a conviction cannot be demanded, nevertheless we are firmly of the opinion that it should be strong, clear, and positively convincing. We have no doubt that the plaintiffs in this case undertook the task with full realization of its seriousness and importance, and yet we cannot but agree with the learned trial judge, who had far greater advantages of observing the witnesses and weighing their testimony than we, who have to appraise it all from the written record, that such proof is lacking.

It would serve no useful purpose for us to go into a lengthy review of the testimony which appears to us to be full of inconsistencies and contradictions. The district judge has made a careful study of it and his analysis led him to the conclusion that Mrs. Le Boeuf had signed the deed herself. Assuming that his deduction in this respect is wrong, however, the only alternative, as far as the testimony of the witnesses discloses, is that her name was signed by her husband, Beattie Le Boeuf, who himself testifies to that effect and who says that he signed it in her presence and with her consent and approval.

"Where a person's name is signed for him at his direction and in his presence by another, the signature becomes his own, and is sufficient to give the same validity to an instrument as though written by the person himself." Coats v. Guaranty Bank & Trust Co., 174 La. 503, 141 So. 41, 43."

True it is that Beattie Le Boeuf was not called as a witness by the plaintiffs, a matter which in itself strikes us as being a bit significant, but which found its explanation when the court permitted counsel for defendant to cross-examine him on the ground that he might be hostile to the defendant's side of the case. True it is, also, that Miss Pearl Le Boeuf, one of his daughters, testifying as a plaintiff witness contradicts him in two respects, first, that he did not sign her mother's name to the document, and, second, that her mother had herself refused to sign it. But these are circumstances which, in our opinion, tend to bring out the inconsistencies and discrepancies which weaken the whole of this testimony on which the

court is asked in large measure to render a judgment on a charge involving moral turpitude on the part of this defendant.

As another example of the many contradictions found, we might point to the testimony of Gilbert Domangue who, in 1927, subscribed to an oath that all the signatures to the act, including that of Olympe Hebert, had been made in his presence, and seven years later, on the witness stand, asserts most positively, under oath, that he did not see her sign. He now denies that he subscribed to the oath in 1927. He admits that he met the defendant and went with him to the notary's office in Houma on the day on which the affidavit appears to have been signed, but positively states that the notary was never authorized by him to subscribe his name to the document in the manner in which it appears thereon. He says that when he reached the notary's office, he was asked whether he could sign his name, and when he replied that he could not, nothing further was said or done. He and Mr. Calvin Wurzlow, the notary, and the defendant Duplantis, sat quietly in the office for about thirty minutes, he says, and then he left them. Mr. Wurzlow's testimony is that Mr. Domangue came to his office with Mr. Duplantis and that he (Domangue) there stated to him that he had seen all the parties to the deed sign the same and that their signatures were genuine and that he could sign the affidavit annexed thereto; that he not only read the affidavit to him, but explained what it was and made him take the usual oath. After all of this, he (Mr. Wurzlow) affixed Domangue's signature by mark. It might properly be stated here that Gilbert Domangue is the husband of Mrs. Vanolia Hebert, one of the grantors who signed the deed and who is a plaintiff in one of the companion suits already referred to.

If a choice has to be made between his testimony in the case and his statement under oath in 1927, we would say that the affidavit made at that time, when the matter was fresh in his mind and there was nothing suspicious about it, reflects the true facts in the case.

One of the best recognized methods of proof of forgery is to compare the questioned signature of the party whose name is alleged to have been forged, with his admittedly geniune signature or at least with some acknowledged true specimen of his handwriting. Usually handwriting experts are called as witnesses and are often of great assistance to the courts in reaching a conclusion on the subject. In this case, although it is admitted that Mrs. Olympe Hebert did write quite a bit, as she kept records in a store and also corresponded with her children who lived away, not one specimen of her genuine signature or of her handwriting was produced so that a comparison could be made with the alleged forged signature. Witnesses on both sides testified about their inability to have located any such specimens. In the absence of any, the lower court had before it the testimony of some of her children who said that they were familiar with her handwriting, and who expressed their opinion that her signature to the deed was not true and genuine. We are of the opinion, as was the district judge, that from their own testimony, the slight familiarity which they had with their mother's handwriting was far from being sufficient to enable them to testify with any degree of conviction in the matter. They merely expressed the opinion, based on the most general statements, that the name of their mother as it appeared on the deed was not in her handwriting.

Further discussion of the testimony would only add length to this opinion, and this we deem unnecessary. We have had the case under advisement for a longer time than usual because of the seriousness of the issue involved. Our consideration of the record each time, however, only served to strengthen us in the conviction that the testimony fails to support the serious charge of forgery made by these plaintiffs, and in this conviction we are fortified by the able opinion of the learned district judge. There has been no manifest error pointed out to us and we are unable to detect any.

For the foregoing reasons, the judgment appealed from is affirmed.