177 So. 658

**JACKSON et al. v. SPEARMAN et al.**

No. 34097.

Nov. 2, 1937.

Rehearing Denied Nov. 29, 1937.

Cook, Cook & Egan, of Shreveport, for appellants.

Wilkinson, Lewis & Wilkinson, of Shreveport, and Sholars & Gunby, of Monroe, for appellees.

LAND, Justice.

Hannah Gibson Jackson died intestate, in the parish of Caddo, on or about July 3, 1921.

On February 25, 1936, the children and grandchildren of Hannah Gibson Jackson, and H. A. Sparke, claiming the interest of

two of the heirs, through mesne conveyance, brought the present suit to recover an undivided one-fifth interest in the S. ½ of the S. W. ¼; the N. W. ¼ of S. W. ¼, less two acres in a rectangle off the east side thereof, all in section 15; and also the north 51⅔ acres of the N. W. ¼ of section 22, all in township 23 north, range 16 west, in the Rodessa oil field of Caddo parish.

Petitioners allege that the above-described property is now in the possession of N. S. and W. R. Spearman, who claim to own the fee title thereto, and that the United Gas Public Service Company claims to own an oil, gas, and mineral lease upon the said property, by virtue of a purported deed which purports to be signed by one *Hanah Johnson* by her mark, but which defendants contend is the mark of *Hannah Jackson:*

Petitioners allege as a fact that the said instrument was not signed by Hannah Jackson and no mark affixed thereto was ever affixed by her.

The deed in question is of date June 28, 1909, and has been recorded in the conveyance records of Caddo parish since the date of its passage, and heretofore has never been attacked by the present heirs of Hannah Gibson Jackson, nor by their deceased mother.

The deed is executed on the usual form of a cash sale, and contains the following recitals:

"Be it known, That this day before me, A. C. Pitts, Notary Public, in and for said Parish, duly commissioned and sworn, came and appeared *Hannah Jackson, wife of Thomas Jackson,* of said Parish and State, herein aided *and authorized by her husband,* she being born Gibson and heir of late Richard Gibson, deceased, who declared that she does by these presents grant, bargain, sell, convey and deliver, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed unto Noah S. Spearman, Her said vendor's interest being an undivided one-fifth (⅕) in and to the following described property. [Then follows the description of the property conveyed, and the consideration, "$125 cash in hand paid, receipt of which is hereby acknowledged."]

"Done and passed at my office in the Parish of Caddo, in the presence of B. H. Norton and W. L. McMichael, Floyd Durden and Austin Collins, competent witnesses on this the 28th day of June A. D. nineteen hundred and nine.

her
"Attest:      Signed Hanah X *Johnson*
mark

"B. H. Norton      Thos X Jackson

"W. L. McMichael   I authorize *my wife* to

"Floyd Durden      sign the above

his
"Austin Collins"      Thos X Jackson
mark

"A. C. Pitts, Notary Public."

Hanah *Johnson* is therefore *identified on the face* of this act of sale as Hanah *Jackson,* by the fact that Thos. Jackson, who signed below her name, *authorizes her as his wife* to sign the act. The mistake as to name is clearly a clerical error on the notary's part.

If this act was executed before two subscribing witnesses, then it is an authentic act, is valid, and makes due proof of itself, and this is the end of plaintiff's suit.

As the confection of the act of sale, and the circumstances surrounding it, are questions of fact, and as the testimony in the case is conflicting, and the credibility of the witnesses is involved, we have decided to accept the facts of the case as found by the trial judge, who had the opportunity, at first hand, of seeing and hearing the witnesses testify, and to approve the conclusions reached by him.

The opinion of the trial judge is as follows:

"This is a suit to recover an undivided one-fifth interest in a certain tract of land in the Rodessa producing area of Caddo parish, La.

"The plaintiffs are heirs of Hannah Gibson Jackson, who died in 1921. Anticipating the defense of the present claimants, the Spearmans, and their lessee, the United Gas Public Service Company, the plaintiffs have attacked a certain deed transferring this undivided one-fifth interest, dated June 28, 1909, which deed recites the sale by Hannah Jackson, of this interest to Spearman.

"The plaintiffs allege that Hannah Jackson did not sign this instrument. An alternative demand has been specifically abandoned by the plaintiffs.

"The instrument attacked was executed before A. C. Pitts, notary public, and as Hannah Jackson could not sign, it is signed by mark; but instead of writing the name

'Hannah Jackson' for the signature, the notary wrote:

her

Hannah X Johnson

mark

"Beneath this is the mark of Thos. Jackson, authorizing his wife to sign. Tom Jackson was the husband of Hannah Jackson. In addition to this fact there are four purported witnesses to the instrument, namely, B. H. Norton, W. L. McMichael, Austin Collins, and Floyd Durden.

"It is admitted that Mr. Norton and Mr. McMichael, reputable white citizens of the community, actually signed as witnesses. The signatures of Austin Collins and Floyd Durden are disputed, and from the evidence it seems apparent that neither one actually signed.

"Hannah Jackson, B. H. Norton, W. L. McMichael, A. C. Pitts, the notary, and Austin Collins are all dead. Tom Jackson, Mr. Spearman, and Floyd Durden, the only living parties to the contract, testified.

"The plaintiffs proved their heirship and the ownership of the one-fifth interest in their ancestor, Hannah Jackson, and closed, shifting the burden to defendants. The defendants introduced the deed as an authentic act, over objection, and then, on warning from the court that no surrebuttal would be allowed, and anticipating evidence tending to show that Hanna Jackson did not sign the instrument, proceeded to introduce what evidence the defendants had regarding the circumstances surrounding the execution of the instrument. Following this came the rebuttal of plaintiffs tending

to show that the instrument was not signed by Hanna Jackson, and then followed considerable evidence to impeach various witnesses.

"The first issue to be determined has to do with whether or not the instrument is an authentic act, and where the burden of proof falls.

"Article 2236 of the Civil Code provides:

" 'The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.'

"Article 2234 of the Civil Code provides:

" 'The authentic act, as relates to contracts, is that which has been executed before a notary public or other officer authorized to execute such functions, in presence of two witnesses, aged at least fourteen years, or of three witnesses, if a party be blind. If a party does not know how to sign, the notary must cause him to affix his mark to the instrument.

" 'All proces verbal of sales of succession property, signed by the sheriff or other person making the same, by the purchaser and two witnesses, are authentic acts.'

"And article 2235 provides:

" 'An act which is not authentic, through the incompetence or the incapacity of the officer, or through a defect of form, avails as a private writing, if it be signed by the parties.'

"It is contended by the plaintiffs that this act is not authentic, for the rea-

son that the recital in the deed is that Hannah Jackson appeared, but the name written by the notary in connection with the mark is the name of Hannah Johnson, and does not purport to be that of Hanna Jackson; and that therefore the instrument is defective in form and does not avail as an authentic act. Further, the plaintiffs contend that there are four purported witnesses instead of two, or three, and that it is evident that two of these witnesses did not sign as such, and that this further vitiates the instrument as an authentic act.

"Finding no cases directly in point, and feeling that the presumptions are in favor of authenticity, we take a contrary view. All of the elements of an authentic act are present because it is acknowledged that two of the witnesses are competent, reputable citizens, and we believe that the additional names are surplusage. The body of the instrument recites the name of the person sought to be bound, namely, Hannah Jackson, as being the vendor, and her husband acknowledges signing the instrument by mark where he authorized his wife to sign. It is evident on the *face* of the papers that the writing of the name Hannah Johnson is purely an error on the part of the Notary, and does not constitute the defect in form referred to in the Civil Code. It is evident that the notary, therefore, executed the instrument as such, the parties and two witnesses all being, on the face of the papers, present and acting according to the requirements of the Civil Code for the confection of authentic acts.

"This holding disposes of the case, but, in event the court should be in error in

this regard, we will discuss the case for a moment on the contrary theory.

■ "If this is not an authentic act, the burden shifts to the defendants to prove the signature of Hannah Jackson. The plaintiffs take the view that that proof can only be made after all of the witnesses on the instrument have been called or accounted for, all other testimony being secondary in character; and they cite respectable authority for such a holding.

"It is clearly the law that the burden of proof rests upon the defendants, under this theory. Watts v. Collier, 140 La. 99, 72 So. 822.

"The plaintiffs contend that the defendants did not call Floyd Durden the only living witness to the instrument. Floyd Durden was called by the plaintiffs in rebuttal, and testified that he did not sign it, and did not see it signed. He also testified that he could not write his name, and from this plaintiffs argue that his name is forged to the instrument as a witness. In other words, while plaintiffs complain that the defendants did not account for Floyd Durden before introducing secondary evidence, they argue that Floyd Durden was not a witness at all to the instrument.

"Austin Collins was shown to be dead, as well as Mr. Norton and Mr. McMichael, but it was acknowledged that Mr. Norton and Mr. McMichael were actually witnesses, at least, that they actually signed as such, and that they are good, reputable white citizens.

"Taking the position that Austin Collins' and Floyd Durden's names were surplusage, then they took the position that secondary evidence could be introduced after that showing.

■ "The defendants produced Mr. W. E. Brown, who testified to seeing them in Mr. Pitt's store executing the instrument; and they produced Mr. Spearman, who swore to its execution, and they produced a negro by the name of Rob McCoy, who swore to seeing them executing some such instrument on that particular occasion, and they cite the circumstance that the father of plaintiffs, and the husband of Hanna Jackson, Tom Jackson, admittedly executed the instrument and authorized his wife to sign it.

"Against this the plaintiffs produced Floyd Durden, who said he did not see it and could not sign; Tom Jackson, who described an entirely different circumstance when he claims that he signed it in a field, on his knee with a pencil; and they cite the bad reputation of Mr. Pitts, the Notary, the forgery of the two additional witnesses' names, and the error on Mr. Spearman's part in swearing that the entire instrument was written in the hand of Mr. Pitts, when in fact part of it was written in the hand of Mr. Fred Leonard, clerk of court, all as evidence tending to show forgery of the signature of Hanna Jackson, or that the name

her<br>
Hanah X Johnson<br>
mark

was not that of Hannah Jackson.

"At most, it is our opinion that these facts presented by plaintiffs cast suspicion on the instrument, but we cannot overlook

the fact that we believe the letter of the law has been complied with in proving the signature, in that, first, the two real and admitted witnesses were shown to be dead, and even plaintiffs take the position that Floyd Durden was not a witness; and then that Mr. Brown, though a character whose mannerisms made the court and all parties smile, none the less, impressed us as entirely sincere, testifying positively to the execution of the instrument, as well as Mr. Spearman, who were all corroborated by Rob McCoy. And we further cannot overlook the fact Tom Jackson was a party to the instrument, authorizing his wife to sign, and his attitude and recital on the witness stand did not impress the court as ringing true, coupled with the fact that there was much evidence to impeach him, as well as Floyd Durden. And, finally we cannot overlook the fact that 27 years have passed with this instrument on record and at least ten or fifteen years of that time with Mr. Spearman exercising dominion over the property without a protest from plaintiffs.

"In fine, we think the burden of proof has been met by the defendants and that evidence has not been presented strong enough to overcome it by all of the peculiar circumstances which may be pointed to as casting suspicion on the deed. The high character of evidence requisite to overcome the presumption of regularity in these instruments is decidedly lacking. LeBoeuf v. Duplantis (La.App.) 162 So. 592 and cases cited.

"The case of Agurs v. Belcher & Creswell, 111 La. 378, 35 So. 607, 100 Am.St.

Rep. 485, contains statements persuasive in this case.

"The demands of the plaintiffs are rejected."

"Cecil Morgan, Judge."

We approve the facts as found by the trial judge, and concur with him as to the law applicable to the case, and adopt, as our own, the opinion handed down by him in this case.

Judgment affirmed.

HIGGINS, J., takes no part.