28 So.2d 665

ARNETT v. MARSHALL.

No. 37858.

Dec. 13, 1946.

O. W. & B. D. Bullock, of Shreveport, for defendant and appellant.

Irion & Switzer, of Shreveport, for plaintiff and appellee.

HAMITER, Justice.

This petitory action has for its purpose the recovery of 240 acres of land in Caddo Parish described as W½ of NE¼, E½ of NW¼, and S½ of SE¼ of Section 13, Township 19 North, Range 15 West.

Earl T. Arnett, the plaintiff, pleaded his title thereto as follows:

"That petitioner acquired said property by inheritance from his father Charles D. Arnett, who died intestate, a resident and citizen of Louisville, Jefferson County, Kentucky, and by purchase of the interest of his co-heirs of Charles D. Arnett, * * *

"That Charles D. Arnett, acquired said property by purchase from J. H. Sale, Virginia M. Sale, and the Sale Oil & Development Company, as more fully shown by that Warranty Deed from the above named parties to Charles D. Arnett and Amanda H. Arnett, his wife, dated July 10, 1929, and recorded September 8th, 1941, in Conveyance Book 454 at Page 286 of the Conveyance Records of Caddo Parish, Louisiana, which is made a part hereof by reference."

In an amended petition plaintiff alleged that his father died on December 5, 1940; that no succession proceedings were had; and that the deeds in the title pleaded were both notarial acts. Further, he alleged that the defendant, Mrs. Birdie Parr Marshall, took possession of the property on or about January 1, 1938, without any legal right or title thereto. He prayed for judgment rec-

ognizing him as owner of the property, entitled to the full and undisturbed possession thereof, and that defendant be ordered to render an accounting for all rents and revenues derived by her therefrom.

Answering, defendant admitted her physical possession of the entire tract. She alleged the acquisition of 60 acres thereof (NW¼ of NE¼ and N½ of SW¼ of N E¼) by purchase from the Receiver in the Receivership of the Sale Oil & Development Company, and acquisition of the remainder (180 acres) by inheritance from her sister, Mrs. Virginia M. Sale. Further, she attacked the deed dated July 10, 1929, from J. H. Sale, Virginia M. Sale and the Sale Oil & Development Company to Charles D. Arnett, a link in plaintiff's chain of title.

In making this attack she pleaded in her original answer that the purported signature on the deed of Virginia M. Sale is not genuine; that J. H. Sale signed the instrument in blank and gave possession of it to Charles D. Arnett for the sole purpose of procuring a purchaser of the property; and that later, without the knowledge or consent of J. H. Sale or of Virginia M. Sale, "the blanks in said deed were filled in, the name of Charles D. Arnett inserted therein as vendee, and that of Virginia M. Sale added thereto as vendor, when and by whom being unknown to defendant." But in an amended answer she withdrew her previously made allegations which acknowledged the execution of the deed by J. H.

Sale, and she specifically averred that all signatures (Virginia M. Sale, J. H. Sale and Sale Oil & Development Company) were forged. Thus, in view of the described pleadings, defendant's attack on the deed dated July 10, 1929, just as the district judge observed in his written reasons for judgment, involves only the issue of the forgery of the signatures.

After trial of the case there was judgment rejecting the demands of plaintiff as to the 60 acres which defendant allegedly acquired by purchase from the Receiver of the Sale Oil & Development Company, the court having held that she was a third party purchaser of such portion. The judgment, however, recognized plaintiff as the true and lawful owner of the remaining 180 acres of the tract and ordered defendant to account to him for the profits and revenues derived therefrom since September 23, 1938.

Defendant appealed, and thereafter plaintiff filed an answer in this court asking for a reversal of the judgment to the extent that it rejected his demands.

According to our appreciation of the record, particularly defendant's testimony given by deposition and certain documentary evidence, Mrs. Virginia M. Sale, a resident of Louisville, Kentucky, acquired the entire 240 acres with her separate and paraphernal funds many years prior to July 10, 1929, the date of the assailed deed. Following the purchase, she organized a corporation known as the Sale Oil & Development

Company and transferred to it the above mentioned 60 acres of the tract. All of the stock of that company was owned by her separately; however, for convenience she registered a few shares in the name of her husband, J. H. Sale, and also some in the names of several of his brothers. Later, Mrs. Sale recalled all of the stock, but the certificate standing in the name of her husband could not be located.

During the first half of the year 1929, J. H. Sale, through telegrams and letters, sought to negotiate the sale or lease (for oil exploration) of the 240 acres to either Roger Lawson or M. D. Saucier, both of Shreveport. The offer made to Lawson was withdrawn on April 20, 1929. The negotiations with Saucier ended unsuccessfully on or about June 21, 1929, which was approximately a month after Sale had acknowledged, in a telegram addressed to Saucier, receipt of a "letter enclosing check and blank deed."

The deed attacked by defendant herein, executed on a standard cash sale form that was printed by the Lindsay Printing Company of Shreveport, was purportedly passed on July 10, 1929 (the date typewritten therein), before Carolyn Weber, a notary public of Jefferson County, Kentucky, in the presence of Earl T. Arnett (the plaintiff herein) and Evelyn Cooley, competent witnesses. It recites that before such notary public came and appeared "J. H. Sale and his wife, Virginia M. Sale, also appeared Sale Oil and Development Company, by J. H.

Sale, sole owner of all the outstanding stock in said company" who declared that they do sell, convey and deliver, etc., with full guarantee of title, unto "Chas. D. Arnett a married man and Amanda H. Arnett, his wife" all of their right, title and interest in and to the described 240 acres. It further recites that, "This sale is made for the consideration of the sum of $8000.00 cash in hand paid, the receipt of which is hereby acknowledged."

At the end of the deed are signatures (purporting to be those of the named vendors, the witnesses and the notary public), written with ink, together with the imprint of a notarial seal and the typed statement "My Commission expires July 8, 1931." Evidence of the erasure of pencil marks in the spaces occupied by the vendors' signatures is noticeable; also, there appears in the body of the instrument, in the space where the names of the vendees are typed, evidence of a heavier erasure. Affixed to the deed is a blue manuscript cover on which has been stamped the date (September 8, 1941) of its filing and recording in the Conveyance Records of Caddo Parish.

From the testimony of plaintiff, a dental surgeon residing in Prestonsburg, Kentucky, and who signed the instrument as a witness, we learn that the deed was drawn in the State of Louisiana and sent to Kentucky to be executed (this indicates that it was the same form mailed by Saucier to J. H. Sale in connection with their unsuccessful negotiations). His father, Charles D. Ar-

nett, a practicing attorney of Louisville, Kentucky; represented the Sales, and had accompanied Mr. Sale on trips to Texas during a period of several years for the purpose of passing upon land titles. On July 10, 1929, plaintiff then being a college student and helping his father during the vacation period, Mr. and Mrs. Sale visited the attorney's office on the fifth floor of the Louisville Trust Building. On their arrival, there was typed into the instrument in question the name of the notary public, the names of the vendees, plaintiff's father and mother (which probably accounts for the erasure noticeable in the space provided therefor), and the names of the witnesses thereto (plaintiff and his father's secretary). Thereafter, the father withdrew a sum of money (estimated to have been $2000) from a safe located in his office, and all of the mentioned persons went to the quarters of the Louisville Trust Company, on the first floor of that building, where they executed the deed before Carolyn Weber, a notary public and stenographer employed in the Mortgage and Loan Department of the named institution. Following the execution, $2000 in currency was paid to the Sales, the remainder ($6000) of the consideration for the transfer, according to plaintiff, being represented by legal services rendered by the father.

Plaintiff further testified that subsequent to his father's death, in his efforts to settle the succession, he found the deed in question, as well as many other unrecorded deeds, in the files of his father. Later, during a trip to Louisiana, he presented the deed to the Clerk of Court of Caddo Parish for recordation, expecting at the time that it would be returned to him on the performance of that official act. When informed that the instrument would have to remain in the archives of the clerk's office, he went to the nearby Globe Map Company, erasing on arriving there pencil notations appearing beneath the signatures, and requested and obtained a photostatic copy of the deed. The pencil marks, he explained, had been placed on the instrument by the person drafting it (evidently Saucier) to indicate to the named vendors (elderly persons) where they should sign; and his purpose in removing them was to prevent the appearance of double signatures on the desired photostatic copy. Referring to the erasure, the trial judge appropriately commented:

" * * * Plaintiff testifies that he endeavored to erase these pencil marks. The value of the pencil marks to defendants is completely destroyed by the fact that under the signature of J. H. Sale, sole owner, the penciled J. H. is printed. This is completely destructive of the contention that they were intended as a guide to a forgery."

At the time of the trial not one of the contracting parties to the deed was alive. Miss Carolyn Weber (now Mrs. Fisher), the notary public, however, appeared personally and testified to the actual signing of the instrument by the vendors, just as did the plaintiff, an attesting witness. Two other persons testified at the trial to the

genuineness of the signatures, one having been familiar with the vendors' handwritings and the other furnishing his opinion as an expert based on comparisons.

A number of defense witnesses, on the contrary, concluded that the signatures were forged, some of the conclusions being predicated on a familiarity with the vendors' handwritings and the remainder on comparisons that were made. Of the several defense witnesses, most testified by deposition, including the defendant herself.

In holding that the signatures on the deed were genuine, the trial judge gave little weight to the testimony of the latter witnesses. Thus, he properly observed in his written reasons for judgment:

"As to the test of comparison, while not questioning their honesty, we are not impressed with the testimony of the experts. Those who deny the signatures pick out some dissimilarity in the signatures to the deed to those on a number of checks as the basis for their conclusion. Yet, invariably the same discrepancy appears in the admittedly genuine signatures. For instance, the bluntness of the bottom of the 'V' in Virginia is dwelt upon. Yet on many of the checks attached to the interrogatories propounded to Birdie Parr Marshall the same bluntness is evident. Much stress is laid upon the difference between the two J's in J. H. Sale's signature to the deed. With more force it can be argued that no clever forger would permit such a difference to appear in such close proximity."

On the other hand, the judge believed, accepted, and acted upon the testimony of those who claimed to have been present when the actual signing occurred, particularly the notary public, which witnesses were seen and heard by him while testifying. In this connection he commented:

"According to plaintiff, the parties, now all deceased, went down to the mortgage and loan department on the first floor of the bank and executed the deed before Carolyn Weber, now Mrs. Carolyn L. Fisher, who was employed as Notary and Stenographer in that department of the bank.

"Mrs. Fisher testified at the trial. She was an old and trusted employee of the bank. She knew Arnett and the Sales well, as they had much business with the bank. She was well acquainted with the signatures of vendors, who transacted much business with her employer. She left the bank soon after this transaction, is married and the mother of three children.

"She says that she has no independent recollection of the execution of this deed, but that it was her invariable practice not to notarize any instrument not signed in her presence. She positively identifies her signature and those of the Sales from her knowledge of their handwriting and from having seen them write.

\* \* \* \* \* \*

"We were very much impressed with the testimony and appearance of Mrs. Fisher. There was no indication whatever of any connection with plaintiff or any motive for falsifying. Necessarily, if her con-

servative testimony is correct, the charge of forgery must fail."

 The testimony of these last referred to witnesses, as we read it, rings with sincerity and truthfulness, and there appears no good reason why it should have been disregarded. Moreover, the trial judge acted correctly in preferring it (assuming it to be worthy of belief) to the testimony given by the defense witnesses. All testimony in proof of handwriting, except where the witness has seen it actually performed, rests upon the principle of comparison; and, although admissible and is to be weighed by the court, it is merely evidence of opinion. Succession of McDonogh, 18 La.Ann. 419. Such evidence must yield when pitted against positive testimony as to the actual writing. Succession of Gaines, 38 La.Ann. 123, 124; Succession of Wadsworth, 152 La. 131, 92 So. 760.

 We conclude, therefore, as did the trial judge, that the defense of forgery of the signatures on the deed has not been sustained.

With that part of the district court's judgment which rejected plaintiff's demand respecting 60 acres of the land, however, we can not concur; and the relief prayed for by plaintiff in his answer to the appeal must be granted.

As before shown, and according to the testimony of defendant herself, the entire 240 acre tract (including the 60 acres) was the separate and paraphernal property of Mrs. Sale. This was true also with reference to all of the stock of the Sale Oil & Development Company to which Mrs. Sale transferred the 60 acres and from which, on its dissolution, defendant claims to have acquired such portion of the property. Of course, a few shares of the corporation's stock stood in the name of the husband, J. H. Sale; but this was merely for the purpose of convenience. Furthermore, by judgment of the First District Court of Caddo Parish, defendant was recognized as the sole heir of Mrs. Sale, her sister, from whom she alleged the remainder of the property (180 acres) had been inherited.

 Having accepted unconditionally the succession of Mrs. Sale, defendant became liable for the debts and obligations of that succession. Among those obligations was Mrs. Sale's warranty of title to the 240 acre tract (including the 60 acres now under consideration) conveyed to Charles D. Arnett and Amanda H. Arnett, this plaintiff's father and mother. By that warranty Mrs. Sale bound herself to defend the title to all of the property and to maintain the vendees in peaceable possession. Certainly Mrs. Sale, if she were alive, could not recover the 60 acres. Neither can this defendant; she stands in the same position as Mrs. Sale, having accepted unconditionally her succession and thereby having assumed her obligation of warranty. She is estopped to deny the warranty. Stokes v. Shackleford, 12 La. 170; Schultz v. Ryan, 131 La. 78, 59 So. 21; Cherami v. Cantrelle,

174 La. 995, 142 So. 150; Soule v. West, 185 La. 655, 170 So. 26; Cook v. Martin, 188 La. 1063, 178 So. 881. This is especially true in view of the fact that the 60 acres really belonged to Mrs. Sale, she having owned all of the stock of the Sale Oil & Development Company.

For the reasons assigned the judgment of the district court is reversed and set aside in so far as it rejects plaintiff's demand regarding the NW¼ of NE¼ and N½ of SW¼ of NE¼ of Section 13, Township 19 North, Range 15 West, Caddo Parish, Louisiana; and it is now ordered that plaintiff be recognized as the true and lawful owner thereof and that defendant account to him for the profits and revenues derived therefrom subsequent to September 23, 1938. In all other respects the judgment is affirmed. Defendant shall pay all costs.