376 So.2d 983 (1979)
Perry H. COLEMAN, Plaintiff-Appellant,
v.
Edna Z. EGLE et al., Defendants-Appellee.
Nos. 12806, 12807.
Court of Appeal of Louisiana, First Circuit.
October 8, 1979.
Rehearing Denied November 29, 1979.
Writ Refused January 18, 1980.
*984 Clyde C. Caillouet, Thibodaux, for plaintiff-appellant.
Bernard E. Boudreaux, Jr., Bauer, Darnall, McNulty & Boudreaux, Franklin, for defendants-appellees.
Andrew J. S. Jumonville, Jumonville, Hartley, Plauche & Broadhurst, Lafayette, Mark H. Tompkins, New Orleans, for defendant Ranger Oil Co., appellee.
Before LANDRY, EDWARDS and LEAR, JJ.
LANDRY, Judge.
Plaintiff (Appellant) appeals from judgment nullifying a purported sale of a one-sixteenth royalty interest to Appellant's assignor, James P. Coleman, from Raymond C. Egle (deceased) on the ground that Egle's signature to the sale was forged. We affirm.
Appellant contends the trial court erred in: (1) rejecting the testimony of three alleged eyewitnesses to the signature of Egle and basing its decision on the testimony of three handwriting experts; and (2) refusing to allow testimony of a rebuttal witness called by Appellant because the witness's name was not listed on pre-trial order.
On November 26, 1975, Egle granted an oil, gas and mineral lease to J. W. Rettig, Jr., covering property situated in Assumption Parish. The lease was assigned to Ranger Oil Company (Ranger) on January 6, 1976. Ranger brought in a producing well on the property on February 4, 1977.
Subject royalty deed was purportedly executed November 26, 1975, and assigned by James P. Coleman to Appellant on March 28, 1977. The royalty transfer was recorded March 28, 1977 (subsequent to Egle's death); its assignment to Appellant was recorded March 28, 1977.
By letter dated June 17, 1977, defendants (Egle's widow and heirs) advised Ranger that they disputed the validity of the royalty deed in question and claimed the undivided one-sixteenth royalty interest allegedly conveyed thereby. The widow and heirs also recorded an affidavit claiming said mineral interest in the records of Assumption Parish on August 8, 1977. On August 30, 1977, Appellant filed suit for judgment decreeing the validity of the royalty deed. Ranger responded with a concursus proceeding. The actions were consolidated for trial and resulted in judgment declaring Egle's signature a forgery.
Appellant testified to having contacted Egle on several occasions prior to November 26, 1975, to negotiate a royalty purchase. According to Appellant, on the day in question he went to the Egle home accompanied by his son-in-law and an acquaintance. He had with him $25,000 in cash in $100 bills intending to offer Egle $20,000 for the purchase of a one-sixteenth royalty in 80 of approximately 800 acres owned by Egle, but was prepared to go as high as $25,000 if necessary. He had the money in cash because Egle had previously indicated he wanted the money paid in cash if an agreement were reached. Appellant was admitted alone to the Egle residence by Mrs. Egle who conducted Appellant to the room in which Egle was seated in a chair. Appellant had with him $20,000 in cash, a royalty deed specifying a consideration of $500.00 and a receipt for $20,000. After reaching an agreement with Egle for $20,000, Appellant also stated that he summoned his son-in-law and acquaintance to witness the transaction. He added that he admitted them to Mr. Egle's room where the matter was concluded. Appellant and his witnesses then left. The witnesses corroborated Egle's testimony and both stated they actually saw Egle sign the royalty *985 deed and receipt after Appellant counted the $20,000 and delivered it to Egle. Appellant explained his failure to record the royalty deed until after Egle's death and subsequent to commencement of production on the property by stating that decedent had so requested because decedent did not want anyone to know his business.
Mrs. Egle testified that her husband was not in good health, was suffering from diabetes and had lost a leg by amputation. Because of his physical infirmities Mr. Egle was dependent upon her. She always assisted her husband in the conduct of his affairs; she invariably drove him to the bank when necessary and she was always present when Appellant came to the house. She stated that Appellant came to the home on the day in question and that she was present during the entire time Appellant was talking with decedent. She added that no agreement was reached; that decedent did not sell any royalties; that decedent received no money from Appellant; and that the two alleged witnesses were not present. She also testified that decedent had a son-in-law who was knowledgeable in land matters and that he invariably consulted his son-in-law before making any transaction concerning his land.
The alleged royalty deed and receipt, together with numerous genuine samples of decedent's signature, appear of record. Appellant's expert, having five years experience, examined approximately 90 genuine signatures and concluded that decedent had in fact signed the disputed documents.
Appellees produced two experts having a combined professional experience of 70 years. They compared the signatures on the disputed instruments with numerous valid samples and concluded that both alleged signatures were forgeries. A third expert, originally engaged by Appellant to determine the authenticity of the controversial signatures, also testified by deposition that the questioned signatures were not those of decedent.
Appellant relies heavily upon LeBoeuf v. Duplantis, 162 So. 592 (La.App. 1st Cir. 1935) and Oatley v. Southland Resorts, Inc., 151 So.2d 115 (La.App. 1st Cir. 1963) for the proposition that he who alleges forgery is required to prove the charge by strong, clear and positively convincing evidence. Appellant also relies upon Arnett v. Marshall, 210 La. 932, 28 So.2d 665 (1946) and State, Through the Department of Highways v. Moity, 276 So.2d 770 (La.App. 3d Cir. 1973) for the rule that in determining an alleged forgery the testimony of eyewitnesses to a signature must prevail over that of experts based on comparison only.
We preface our discussion by conceding that one who alleges forgery bears the burden of proof. Eschete v. Kraemer, 129 So.2d 475 (La.App. 1st Cir. 1961). We recognize the rule announced in Arnett, above, but find it inapplicable under the facts of the instant case. In Arnett, above, the Supreme Court affirmed a lower court finding of genuineness of a contested signature based on the testimony of the notary public before whom the document was executed. In Moity, above, the trial court accepted and believed the stipulated testimony of a credible eyewitness, which testimony was corroborated by other circumstances.
In this instance the alleged witnesses' presence is seriously disputed and the circumstances shown at trial make their alleged presence highly circumspect. The trier of fact believed Mrs. Egle who testified that the alleged witnesses were not present. In view of the record, we not only find no manifest error in this conclusion, but we also find ample evidence of record to support this determination.
The finding of forgery is also amply supported by the record. The questioned signatures were written in a smooth, even flowing, firm hand, precisely on the line indicated for each signature, with virtually no variation of letters in either instance. Known specimens of decedent's signature evidence a somewhat tremulous handwriting with a tendency to slope either upward or downward above or below the line of signature, and also show variations in the forming of letters. The questioned signatures *986 appear so similar that they give the impression of having been made by a rubber stamp. Based on these considerations, three experts found the questioned signatures to be forgeries. We hold, therefore, that the burden of proof required of defendants has been fully discharged in this instance. See also Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Prior to trial each party filed a list of witnesses and exhibits proposed to be used during trial. Appellant listed his witnesses and reserved the right to call "such other witnesses as may be additionally necessary for proper rebuttal." During trial, the court refused to allow Appellant to call an unlisted witness in rebuttal. The testimony of the witness was proffered and appears of record as such. Appellant urges that this evidence should be considered in corroboration of the eyewitness testimony offered in Appellant's behalf.
In essence the witness testified concerning an alleged telelphone conversation with decedent in which decedent allegedly admitted having executed a royalty deed in favor of Appellant. After reviewing the proffered testimony, we find that its exclusion, if erroneous, was harmless error. Assuming the trial court had considered this testimony, the court could still have logically concluded the signatures were forgeries. The testimony merely corroborates eyewitness testimony which the trial court rejected for reasons apparent on the face of the record. The error, if any, was not prejudicial. Ferrantelli v. Wright, 346 So.2d 242 (La.App. 4th Cir. 1977).
The judgment is affirmed at Appellant's cost.
AFFIRMED.