525 So.2d 174 (1988)
Mrs. Myrtha THOMPSON, et al., Plaintiffs-Appellants,
v.
Grady WOODS, Defendant-Appellee.
No. 87-131.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*175 Gilbert F. Stampley, New Orleans, for plaintiffs-appellants.
Edward Saal, Jr., Gueydan, for defendant-appellee.
Before FORET and DOUCET, JJ., and SWIFT, J. Pro Tem.[*]
G. WILLIAM SWIFT, Jr., Judge Pro Tem.
Mrs. Myrtha Thompson Woods and her husband, Lawrence Woods,[1] filed this suit against their nephew, Grady Woods, seeking to set aside a purported credit sale of their family home dated May 3, 1962, on grounds of fraud and simulation. The defendant answered and asserted a reconventional demand for damages to the dwelling allegedly resulting from poor maintenance by the plaintiffs while in possession thereof under a usufruct reserved in the deed. Following a trial on the merits, the court rejected plaintiffs' demand to set aside the sale and also denied defendant's reconventional demand. Plaintiffs filed a devolutive appeal. We affirm the trial court's ruling.

FACTS
On or about November 17, 1947, Myrtha Thompson Woods purchased from her brother, James Thompson, Lots One and Two of Block Number 36 in Gueydan, Louisiana, which he had inherited from their father, Horace Thompson. Plaintiffs built a home and moved on the subject property in 1950. The materials used in the construction of the home were purchased on credit from Gueydan Lumber Company, Inc. On February 7, 1950, plaintiffs executed an installment note in favor of the lumber company in the amount of $1,636.62, plus 8% interest, which was secured by a mortgage on the property. The note was subsequently turned over to one of the company's major stockholders, LP. Saal.
*176 Lawrence Woods, made sporadic payments on the note, but never made them on time. It appears that Mr. Saal made subsequent advances to Mr. Woods, over and above what was already owed. This practice continued until a decision was made by the creditor to foreclose on the property.
To prevent the foreclosure plaintiff Woods approached Grady Woods and indicated their desire to sell the mortgaged property. The defendant agreed to purchase the property and assume plaintiffs' debts to LP. Saal. As additional consideration, he agreed to allow the plaintiffs to remain in their home and to use the premises throughout their lifetime.
In pursuance with this agreement plaintiffs purportedly signed the credit deed in the presence of two witnesses and LP. Saal, Jr., as notary public, on May 3, 1962, conveying to Grady Woods Lot Number One and the West Half of Lot Number Two of Block Number 36 in Gueydan, together with the improvements thereon. The consideration recited in the deed was $2,700.00, evidenced by a bearer note to be paid in monthly installments of $35.00, beginning June 3, 1962. Also included in the deed was a reservation by the plaintiffs of a usufruct over all of the property for the duration of their natural lives.
The note was delivered to Mr. LP. Saal, in the presence of the plaintiffs, and the payments were made by Grady Woods to Mr. Saal until it was paid in full on June 12, 1971. Mr. LP. Saal, Jr. testified that he retained the prior mortgage note, with the consent of the plaintiffs, and saw that the mortgage was properly cancelled from the conveyance records.
The plaintiffs remained in peaceful possession of the property until 1984, when the defendant allegedly attempted to evict them from the premises. Mrs. Thompson and her son, Robert Woods, testified it was at this time that they first became aware of the fact that the defendant's name appeared as the owner of the property in the Vermilion Parish conveyance records.
Plaintiffs alleged in their petition that the deed was a nullity due to fraudulent acts, which included affixing plaintiffs' signature on the deed without their consent and concealing the document until a dispute arose between the parties. In the alternative, they contend that the sale was a simulation without consideration and that the parties never intended to convey ownership of the property.
Grady Woods' position is that the plaintiffs were fully aware of the entire transaction. The deed was duly executed in authentic form and the consideration for the sale was his payment of their indebtedness to LP. Saal and allowing them to remain on the property as usufructuaries. Furthermore, he asserts the plaintiffs breached their agreement, resulting in the devaluation of the property in the amount of $10,000.00. As the defendant has neither appealed nor answered this appeal, that issue is not before us.

FORGERY IN THE EXECUTION OF THE MAY 3, 1962 CREDIT SALE
The Louisiana Civil Code requires that all sales of immovable property shall be made by authentic act or by act under private signature. LSA-C.C. Art. 1839 and Art. 2440. The requirements for an authentic act appear in LSA-C.C. Art. 1833, which provides:
"An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed.
To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the same witnesses, provided that each party who executes it does so before a notary public or other office authorized to perform that function, and in the presence of two witnesses and each party, each witness, and each notary public signs it.
If a party is unable or does not know how to sign his name, the notary public *177 must cause him to affix his mark to the writing."[2]
A review of the testimony elicited during the trial shows that an authentic act was properly executed by the parties and that the plaintiffs signed the act with full knowledge of its contents. Mr. LP. Saal, Jr. testified that he prepared the deed as per the instructions of the parties and that the plaintiffs executed the document in his presence after he explained the terms and consequences.
Helen Gaspard Hayes, one of the witnesses to the sale, testified that plaintiffs signed the deed in her presence and in the presence of Cephronia Thibodeaux Prather, and the notary public, LP. Saal, Jr. She also said that, due to Lawrence Woods' inability to read and write, his name was written out by Mr. Saal in plaintiffs' presence and thereafter, Mr. Woods made his "X" mark. Cephronia Thibodeaux Prather, the other witness to the sale, also said that Lawrence Woods "made his mark" on the deed. She further testified that the document was signed in her presence and that of Mrs. Hayes and the notary.
In support of her contention that she did not sign the deed, the plaintiff asserts that she has never spelled her name Me rtha, as appears on the instrument. Instead, she said she always signed as Myrtha. The only document with her signature that was introduced into evidence, other than the subject deed, was the act of mortgage executed by the plaintiffs on February 7, 1950. In the mortgage plaintiff signed her name Myrtha Thompson Woods, but other than the spelling of the first name, the signature and handwriting appear to be identical to that used in the subject deed. Although her signature does not appear thereon, other documents introduced into evidence reflect that plaintiffs name had been previously spelled Me rtha. The deed from plaintiffs brother, James Thompson, dated November 17, 1947, was introduced by plaintiffs during the trial to prove Mrs. Woods' ownership of the subject property. Her name was spelled Me rtha therein. In addition to the foregoing, defendant introduced a certified copy of a cash sale from plaintiff's sister, Margaret Pitre, and plaintiffs nephew, Whitney Willis, in which they transferred their interest in the subject property to Me rtha Thompson. Thus, it appears that on at least two other real estate transactions of record, plaintiffs name was spelled Me rtha.
In the absence of a forgery an authentic act is full proof of the agreement contained therein. A person denying the validity of a signature on a notarized instrument bears the burden of proof that the signature is a forgery. LSA-C.C. Art. 1835.[3]Succession of Velasquez-Bain, 415 So.2d 1013 (La.App. 4 Cir.1982), on appeal after remand, 471 So.2d 731 (La.App. 4 Cir.1985); Coleman v. Egle, 376 So.2d 983 (La.App. 1 Cir.1979), writ den., 379 So.2d 15 (La.1980). In the present case the trial judge ruled that Lawrence and Myrtha Woods signed the deed with knowledge of its contents and they are bound by its terms. Of course, on review an appellate court may not disturb a trial court's evaluations of credibility and factual determinations unless the record reveals that the trial court's decision is manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After reviewing the record, we hold that plaintiffs have not met the required burden of proof to establish forgery, and certainly the trial judge's conclusions as to the validity of the deed were not manifestly erroneous.

SIMULATION
We now turn to the plaintiffs' contention that the sale was a simulation due to a lack of consideration and because the parties never intended to convey ownership of the subject property.
A simulated sale is one which, by mutual agreement of the parties, does not result in the transfer of property. Although *178 such a sale is usually clothed in legal formalities, it does not express the true intent of the parties. LSA-C.C. Art. 2025; Wilson v. Progressive State Bank & Trust Co., 446 So.2d 867 (La.App. 2 Cir. 1984). In order to determine whether or not a sale is simulated the court must determine whether the parties acted in good faith, whether there was an actual intention to transfer property, and whether any consideration was given for the transfer. Hall v. Allred, 385 So.2d 593 (La.App. 3 Cir.1980), writ denied 393 So.2d 735 (La. 1980); Phillips v. Nereaux, 357 So.2d 813 (La.App. 1 Cir.1978), on rehearing, 361 So. 2d 228 (La.App. 1st Cir.1978).
Generally, the party alleging a simulation has the burden of proof to establish it with reasonable certainty. However, La. C.C. Art. 2480 provides in part as follows:
"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, ..."
See also Russell v. Culpepper, 344 So.2d 1372 (La.1977); Boagni v. Waterbury, 403 So.2d 856 (La.App. 3 Cir.1981).
Applying the foregoing to the facts of the instant case, we agree with the trial court that the sale executed by the plaintiffs was not a simulation. They remained in possession of the subject property because in the deed they reserved a lifetime usufruct of the premises. This usufruct was specifically outlined and made part of the sales contract executed by the parties. In such a case the codal presumption of simulation is applicable and the burden of proof shifts to the vendee to establish the actuality of the sale by a preponderance of the evidence.
From our review of the record it is quite clear that the defendant's $2,700.00 note was delivered to LP. Saal, Sr. in return for the cancellation of plaintiffs' mortgage note dated February 7, 1950, and that defendant's note was ultimately paid by him. Under our jurisprudence if any consideration is given for the conveyance, no matter how small, the transaction will not be set aside as a simulation. Furthermore, the assumption of a vendor's liability is valid consideration to support the conveyance of property, and such transactions will not be set aside as a simulation. Russell v. Culpepper, supra; Waterbury v. Waterbury, 496 So.2d 1374 (La.App. 3 Cir.1986), writ denied 499 So.2d 88 (La.1987); Roy v. Roy, 382 So.2d 253 (La.App. 3 Cir.1980).
In our opinion there was ample consideration for the conveyance of the subject property to defendant and the plaintiffs had every intention of transferring title to the subject property. When plaintiffs defaulted on the mortgage held by LP. Saal, Sr., they elected to make this sale to the defendant to prevent foreclosure proceedings and the loss of their property. The defendant executed a promissory note in an amount to retire the plaintiffs' outstanding mortgage, which was cancelled. By virtue of the usufruct which they reserved in the sale, Lawrence Wood remained on the property until his death and Myrtha Thompson continues to reside on the property.
We conclude that the cancellation of the 1950 mortgage note together with the privilege of remaining on the subject property rent free constituted valid consideration and that defendant has met his burden of proof in establishing the validity of the sale. Consequently, we find no merit in plaintiffs' contention that the sale was a simulation.
For the reasons assigned, the judgment of the trial court is affirmed. The costs of this appeal are assessed to plaintiff-appellant, Myrtha Thompson.
AFFIRMED.
NOTES
[*] Judge G William Swift, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore
[1] This plaintiff was deceased at the time this appeal was taken.
[2] This article reproduces the substance of former C.C. Art. 2234 (1870), which was in effect at the time of the transaction, and does not change the prior law.
[3] This article reproduces the substance of former C.C. Art. 2236 (1870) which was in effect at the time of the sale, but it does not change the law.