REGAN, Judge.
The plaintiff, M. A. Holahan, the duly appointed trustee in the bankruptcy proceedings of the defendant, Paul J. Du-rand, filed this suit against Paul J. Du-rand, Mrs. Duran, and Mrs. Guy Faget, Durand’s daughter, endeavoring to nullify a sale of immovable property from Durand to his daughter, Mrs. Faget, predicated upon his contention that the sale was a simulated one, the purpose of which was to’ place this property beyond the reach of Du-rand’s creditors. This suit was instituted by the trustee in bankruptcy in order to bring the property into the corpus of the bankrupt estate for the benefit of Durand’s creditors.
The defendants answered and asserted therein that the sale was a bona fide transfer of the immovable property, and the defendants conceded that Durand remained in possession of the property from the date of the purported sale until the institution of this suit.
Following a trial on the merits, the lower court rendered judgment decreeing the property purported to' be transferred by Durand to his daughter to be a simulated sale, and also decreed that the ownership of the property remained in the defendants, Mr. and Mrs. Paul J. Durand, from the date of the acquisition thereof until Du-rand’s filing of a voluntary petition in bankruptcy on November 16, 1964, at which time title to the property became vested in the trustee of Durand’s bankrupt estate.[1]
From that judgment, the defendants have prosecuted this appeal.
*529 The record discloses that on August 16, 1960, Mr. and Mrs. Durand purportedly-sold the property, which forms the subject matter of this litigation, to their daughter, Mrs. Joan Durand Faget, by an act before a local Notary Public.[2] The consideration recited therein was $6,500.00 cash together with the assumption of a mortgage in favor of Aetna Life Insurance Company in the amount of $1,300.00. The vendors also reserved a usufruct for life on the propl erty.
The decision in this case, counsel informs us, turns on the rationale emanating from Article 2480 of the Louisiana Civil Code which reads:
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usu-fruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
In view of the fact that Mr. and Mrs. Durand reserved the usufruct for life in the property and have retained possession thereof continuously since the date of the sale, the burden of proof is upon them and on their daughter as purchaser, to prove that the consideration was paid in good faith and that the sale was a real rather than a simulated transaction. Therefore, the significant question posed for our consideration is whether the defendants have offered sufficient evidence in order to overcome the presumption that the sale was in all respects a genuine alienation rather than a mere simulated transfer.
The primary evidence offered on behalf of the defendants was the testimony of Paul J. Durand. He testified that he received the sum of $6,500.00 from his daughter in cash, and that the money was paid to him at his home in the presence of his wife. However, no receipt or other evidence of payment was given to him by his daughter. Durand related that his daughter and son-in-law resided in the property until they moved to Mobile, Alabama.
He sought to establish the ability of Mrs. Faget to pay for the property by explaining that his daughter possessed a masters degree in biology and medical technology, was employed as a medical technologist, and was not required to pay room and board to her parents despite the fact that she earned a substantial salary. This fact was corroborated by Dalton L. Truax, Durand’s brother-in-law.
In contradiction of this testimonial proof, which was obviously self serving and was not substantiated by any documentary evidence, the plaintiff proved that approximately one month prior to the act of sale, the loan purportedly assumed by the purchaser had been paid completely, and the cancelled note therefor was given to Du-rand. Consequently, the only consideration for the sale, if any, could have been the cash payment which the defendants assert was made, but which, to reiterate, was not substantiated by any documentary evidence.
In contravention of the testimony offered by Durand in the course of the trial in the lower court to the effect that the cash consideration was paid by his daughter at home in the presence of his wife, it was established by the plaintiff that the defendant testified under oath in bankruptcy court that he received the cash consideration in the form of a check from his son-in-law, but that he did not cash the check because the son-in-law, a medical doctor, had furnished him extensive medical treatment without a fee. Aside from the fact that this statement flatly contradicted the defendant’s testimony in the lower court, no check or other, evidence was ever produced *530 to substantiate the fact that the payment was ever made. Upon being prodded with respect to the contradictory nature of his testimony in the bankruptcy court, the defendant retorted that he “might have said anything” in the bankruptcy proceeding.
It is quite significant to point out that the trial of this case was continued as an open matter in order to afford the defendant an opportunity to produce his daughter, Mrs. Faget; her testimony was never offered to the court either by deposition or in person. Likewise, the testimony of the defendant’s wife was never offered, and, insofar as the record reflects, she never made any appearance in this suit. Therefore, in addition to the presumption of simulation because of the retention of the usufruct of the property, the plaintiff is further entitled to the presumption that the testimony of the above parties to the sale would have been damaging rather than corroborative.[3]
Additional evidence was adduced to reveal that the defendant’s daughter maintained a savings account in a local bank, and the defendants contended that she accumulated the cash in this account for the purpose of purchasing her parents’ residence. This money did not pass through the hands of the notary who confected the act of sale, nor, to reiterate, was the money transferred in the presence of the notary or of the witnesses thereto. Therefore, if the notary and witnesses had been called on behalf of the defendants, their testimony would not have supported the foregoing contention. The circumstances surrounding the act of sale further supports the conclusion of simulation reached by the trial court. For example, all certificates were waived by the parties to the sale. Of course, this is not an unusual circumstance; however, it tends to show, in view of other suspicious facts, that the transaction was not one made at arms length. Moreover, a copy of the sale was never furnished to the assessor, and the property remained assessed on the tax rolls in the name of Durand. Finally, it was shown that after the passage of the act of sale, and especially in the years of 1963, 1964, and 1965, the defendant claimed, under oath, the homestead exemption provided by law to owners of property who reside therein.
An analysis of the jurisprudence reveals that the foregoing facts are very detrimental to the defendant, and further strengthens the presumption that the sale was a simulated one. The courts have considered the absence of checks, receipts, notes, or any other documentary evidence as leading to the conclusion that the sale was a simulation.[4] The fact that no evidence is introduced or supplied by witnesses other than the parties to the act has been used to support a finding of simulation.[5] The isolated testimony of the defendant is not enough to rebut the presumption of simulation arising from his reservation of a usufruct and the retained possession of the property when uncorroborated by other witnesses or by documentary evidence.[6] The surrender of complete dominion and control of the property by the vendees thereof leads to the conclusion that the sale was not in good faith.[7]
After reviewing the evidence adduced by all of the litigants herein and the law applicable thereto, we are lead to the inevitable conclusion that the sale was simulated, and was not intended to be a good faith transfer of title to the property.
*531 While the trustee is entitled to the presumption of simulation established by the rationale of Article 2480 of the Civil Code, the record is embellished with sufficient evidence, in our opinion, to prove the simulation without resorting to the necessity of relying on the presumption created by that article.
For the foregoing reasons, the judgment of the lower court is affirmed.
The defendants are to pay all costs incurred herein.
Affirmed.

. See Section 70 of the Bankruptcy Act, 11 U.S.C. § 110.

. The sale was recorded on the same day in C.O.B. 634 Folio 369 of the Conveyance Office for the Parish of Orleans.

. Travelers Insurance Company v. McArthur, 175 So.2d 669 (La.App.1965).

. See Travelers Insurance Company v. McArthur, 175 So.2d 669 (La.App.1965).

. See Carruth v. Jones, 139 So. 655 (La.App.1932).

. Pruyn v. Young, 51 La.Ann. 320, 25 So. 125 (1899).

. See Harper v. Rosenblath, 27 La. 507, 79 So.2d 863 (1955).