REGAN, Judge.
This is a succession proceeding wherein one of the decedent’s forced heirs, his son, Joseph Boniface Dornier, Jr., filed this suit against his brother, Henry B. Dornier, the defendant, endeavoring to nullify a sale of immovable property from the decedent to the defendant which was consummated on October 14, 1946. The plaintiff, alternatively sought to have the property collated and returned to the mass of the succession.
The defendant answered and denied that the sale was either a simulation or that it was subject to collation. He then explained that the property was sold to him by his father on October 14, 1946; that he gave as consideration therefor a promissory note in the amount of $12,000.00 payable in twelve annual installments of $1,-000.00 bearing interest at the rate of 6% per annum; and that the note was paid in full out of his own funds and from the proceeds of a loan which he obtained from the Federal Land Bank of New Orleans.
The case was tried on its merits on March 18, 1959, after which it was taken under advisement by the lower court. Approximately ten years later, judgment was rendered in favor of the defendant declaring that the sale was a valid one.
From that judgment the plaintiff has prosecuted this appeal.
The record discloses that the decedent, Joseph B. Dornier, Sr., died intestate on May 24, 1948, in St. James Parish, Louisiana. Prior to his death, on October 14, 1946, he executed an act of sale to the defendant, his son, Henry B. Dornier. The recited consideration for the sale was $12,-000.00, secured by a mortgage and a promissory note. No cash changed hands when the sale was consummated.
The plaintiff insists that the foregoing transaction was a simulated sale or disguised donation which contravened the rationale of Article 2444 of the Civil Code which provides that:
“The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.” [1]
The plaintiff also relies on Civil Code Article 2480, which reads:
“In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale.”
In view of the fact that the sale was for $12,000.00, the same price paid therefor by the decedent in 1921, the plaintiff argues that of necessity the passage of more than twenty-five years between the date of the two sales creates a presumption that the property increased in value. He asserts that the decedent refused an offer of $35,-000.00 in 1945 and he points out that the sale included many improvements, livestock, implements, machinery, “farm benefit checks,” mineral leases, and other assets which would have the effect of raising the actual value of the property in the year of 1946 to a sum in excess of $50,000.00.
*581 An analysis of the record reveals that the plaintiff offered no evidence whatsoever to prove that the sale was simulated. On the contrary, it shows that the purchase price was paid in full in conformity with the terms of the promissory note given as consideration at the time of the sale. On January IS, 1953 the defendant obtained a loan from the National Farm Loan Association in the amount of $8,600.00 which was paid by check directly to his mother, Mrs. Julie D. Dornier.[2] This cancelled check was offered in evidence, and there can be no doubt that the sum was received by Mrs. Dornier. In addition thereto the defendant testified that the sum of $8,-600.00 represented the balance due on the promissory note which, to reiterate, he gave to his father when he purchased the property. He explained that the remainder of the purchase price had already been paid to his mother by placing in her possession United States Government Bonds which had been made payable to himself and in the alternative, to his mother. His testimony was corroborated by his mother, who stated unequivocally that the entire purchase price of the sale had been paid by her son.
In addition to the foregoing proof that the defendant actually paid the purchase price, cancelled checks were offered in evidence which disclosed that Mrs. Dornier, the defendant’s mother, dispersed the proceeds of the sale to her children and grandchildren. She related that while she was aware of the fact that she was entitled to retain as her own one-half of the sale price, she nevertheless chose to divide the entire sum among her children.[3]
The plaintiff’s argument that the sale should be presumed to be a simulated one because the vendor remained in possession of the property is likewise without merit. The evidence adduced herein reveals that at the time the defendant returned from the armed services and assumed the management of this property his father was suffering from a heart condition. This parent owned another piece of property, but it would have been necessary for him to ascend and descend approximately thirteen steps in order to enter and exit therefrom. Consequently, despite the wish of both the defendant’s father and his mother to move into their own home, they were forced by the condition of the father’s health to remain in the defendant’s property. Under these circumstances, there exists no presumption that the sale was a simulated one.
Alternatively, the plaintiff insists that the property is subject to collation and should be returned to the mass of the succession for the reason that the price paid was less than one-fourth of the value of the property in contravention of Article 2444 of the Civil Code, set forth hereinabove, and that if a price was paid, it was a “very low price” subjecting the transaction to collation in conformity with the rationale emanating from Civil Code Article 1248.[4]
The only evidence offered by the plaintiff to establish the value of the property at the time of its sale in 1946 was the testimony of three of the defendant’s brothers, all of whom alluded to various offers purportedly made to their father for the purchase of this property. None of these offers was made in the presence of the individual who testified with respect thereto, nor were these so-called offers ever reduced to writing. In fact no credible evi *582 dence of any kind was offered in support of plaintiff’s contention that these offers actually existed. It is very significant, in connection with this aspect of the case, to point out that the defendant’s mother, when asked about the existence of an offer to purchase the property for the sum of $35,000.00, emphatically asserted that she had never heard of such an offer.
The defendant also offered the testimony of a real estate expert, Max Derbes, Sr., who related that, predicated on the basis of comparable sales made in the area within a six month period of the sale in question, the property possessed a value of approximately $75.00 per acre. Multiplying this figure by the number of acres involved it appears that the market value of the property at the time of the sale was approximately $1,000.00 more than the actual purchase price. Therefore, the only convincing evidence contained in the record discloses that the sale price was not less than one-fourth of the real value of the property and therefore the sale did not contravene the rationale of Article 2444 of the Civil Code.
In conclusion the plaintiff argues that the consideration for the sale represents “a very low price,” in contravention of Civil Code Article 1248, and that it is nonetheless subject to collation despite the fact that it was not sold for less than one-fourth of its value. In addition to the testimony of Max Derbes, referred to here-inabove, evidence was introduced to show that the nearby Celestine Plantation, which acreage was approximately identical in quality to the land involved in this suit, was sold for $24,000.00 within six months of the sale of this property and that it contained 660 acres of ground. The property herein consists of only 170 acres of ground, 130 acres of which were tillable. Therefore, we are convinced that the price per acre paid by the defendant, as compared to the price per acre paid for the Celestine Plantation, was most favorable to the- decedent and was not a “very low price.” Consequently, this final contention of the plaintiff must be rejected.
For the foregoing reasons, the judgment of the lower court is affirmed. The plaintiff is to pay all costs incurred herein.
Affirmed.

. See also Article 2239 of the Civil Code.

. Mr. Dornier had died and the purchase price was paid to his widow, the defendant’s mother.

. Mrs. Dornier calculated each of her chil-drens’ share at $1,300.00 each, but the basis of this computation is not apparent from the record.

. C.C. Art. 1248
“The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, for [or] has spent money to improve his son’s estate, all that is subject to collation.”