344 So.2d 1372 (1977)
Laura Claudette Culpepper RUSSELL et al.
v.
Louis L. CULPEPPER.
Laura Claudette Culpepper RUSSELL and Armstrong R. Conley
v.
Louis L. CULPEPPER.
Nos. 58813, 58821.
Supreme Court of Louisiana.
April 11, 1977.
Rehearings Denied May 13, 1977.
*1374 Lawrence K. McCollum, Shreveport, for plaintiff-applicant in No. 58813; for defendant-respondent in No. 58821.
Russell E. Gahagan, Gahagan & Gahagan, Natchitoches, for defendant-respondent in Nos. 58821 and 58813.
*1375 F. Clay Tillman, Jr., Leesville, for plaintiff-appellant in No. 58821.
SANDERS, Chief Justice.
Forced heirs of Mrs. Mattie R. Culpepper brought suit to annul two transfers of immovables as simulated sales or, alternatively, as donations in disguise. The district court rejected the plaintiffs' demands. The Court of Appeal affirmed. La.App., 337 So.2d 226 (1976). We granted writs to review this judgment. La, 340 So.2d 314 (1976); La, 340 So.2d 315 (1976).
The Court of Appeal concisely narrated the background facts as follows:
"Mrs. Mattie R. Culpepper married Rufus Conley prior to 1900, and of that union Armstrong R. Conley, one of the plaintiffs in this suit, was born. Rufus Conley died in 1901, and shortly thereafter Mrs. Mattie R. Culpepper married Claude H. Culpepper. Of that marriage three children were born, one of whom was Claude W. Culpepper, and another was defendant Louis L. Culpepper. The third child of that marriage died in infancy.
"On October 3, 1929, during the existence of the community which existed between Claude H. and Mattie R. Culpepper, the said Claude H. Culpepper acquired title by warranty deed to a tract of land comprising approximately 815 acres, located in Ward 9 of Natchitoches Parish, Louisiana. That tract of land is the property which is at issue in this suit.
"Claude H. Culpepper died on December 25, 1940, leaving as his sole survivors his widow, Mrs. Mattie R. Culpepper, and his two sons, Claude W. and Louis L. Culpepper. His succession was opened and a judgment of possession was rendered on January 2, 1941, recognizing his widow and sons as his sole survivors and heirs at law, sending Mrs. Mattie R. Culpepper in possession of an undivided one-half interest in and to the property left by him, sending his two sons in possession of the remaining one-half interest in that property, in equal proportions, and granting to Mrs. Culpepper the usufruct provided by law on the interests inherited by her sons.
"On January 9, 1941, or a few days after the above judgment was rendered, Claude W. Culpepper executed a warranty deed which purports to sell and convey to his mother, Mrs. Mattie R. Culpepper, all of his undivided interest in and to the property inherited by him from his father, and particularly his interest in the above 815-acre tract of land. The deed is in the form of an authentic act and it contains the following stipulation relative to the consideration which was paid for the property:
"The consideration for which this sale and transfer is made is the price and sum of $2,500.00, no part of which is paid in cash and the entire consideration being the assumpsite by the vendee of one-fourth of all indebtedness of Claude H. Culpepper, Deceased, which indebtedness is in excess of $10,000.00, but specifically of a certain mortgage held by the Federal Land Bank of New Orleans affecting the said property in the unpaid balance of $9,479.68.'
"The above deed, dated January 9, 1941, is one of the documents which plaintiffs attack in this suit as being a simulation.
"On April 9, 1948, Mrs. Mattie R. Culpepper executed a warranty deed purporting to sell and convey to defendant, Louis L. Culpepper, all of her right, title and interest in and to the above 815-acre tract of land, but reserving to herself the usufruct of all of said property for the remainder of her life. With reference to the consideration paid for the property, the warranty deed provides:
"The consideration for which this sale and transfer is made is the price and sum of Thirty Five Hundred Dollars ($3500.00) cash in hand paid and receipt whereof is hereby acknowledged and discharge given; and other good and valuable considerations.'
*1376 "The last mentioned warranty deed, dated April 9, 1948, is the second act of sale which plaintiffs contend is a simulation or a donation in disguise.
"Claude W. Culpepper (one of the sons of Claude H. and Mattie R. Culpepper) died on June 20, 1955, and all of the right, title or interest which he had or may have had in and to the above tract of land has now become vested in his granddaughter, Mrs. Laura Claudette Culpepper Russell, a plaintiff in this suit.
"On January 5, 1972, Mrs. Mattie R. Culpepper executed a document entitled `Renunciation of Usufruct,' in which she fully and finally renounced her right of usufruct on the above 815-acre tract of land in favor of defendant Louis L. Culpepper, his heirs, successors and assigns, forever.
"Mrs. Mattie R. Culpepper died on November 9, 1973, leaving as her sole and only surviving heirs at law her two sons, Armstrong R. Conley and Louis L. Culpepper, and her great granddaughter, Mrs. Russell. The succession of the decedent, Mrs. Culpepper, has never been opened."
Laura Claudette Culpepper Russell contends that the 1941 transaction in which Claude W. Culpepper sold all his interest in his father's succession to Mattie R. Culpepper is a simulation. She claims that no consideration supported the transfer.
The 1941 warranty deed describes the consideration as $2,500, not in cash, but in the assumption of one-fourth of Claude H.'s indebtedness which is in excess of $10,000.00, including $9,479.68 unpaid balance of a Federal Land Bank mortgage upon the property.
Mrs. Russell concedes that a vendee's assumption of an existing mortgage is valid consideration. Bertucci v. Bertucci, 224 La. 364, 69 So.2d 502 (1953); Succession of Viola, La.App., 138 So.2d 613 (1962); Quarles v. Quarles, La.App., 179 So. 512 (1938). However, she distinguishes the instant case on the following ground: by Mattie's unqualified acceptance of Claude H.'s succession, she became solidarily liable for the succession debts; therefore, by assuming liability for a portion of those debts she did not further obligate herself.
This contention is ill-founded. Claude W.'s unconditional acceptance of Claude H.'s succession rendered him liable for the succession debts in proportion to his virile share in the succession. LSA-C.C. Arts. 1425, 1427. As between the parties, the vendee's assumption of this liability relieved the vendor of the obligation to pay his virile share of the succession debts. As to third parties, including the mortgage creditor, it rendered Mattie liable for Claude W.'s virile share of the succession debts. Such an assumption is valid consideration.
A transaction will not be set aside as a simulation if any consideration supports the transaction, because the reality of the conveyance is thus established. Bagala v. Bagala, 237 La. 60, 110 So.2d 526 (1959); Citizens' Bank and Trust Co. v. Willis, 183 La. 127, 162 So. 822 (1935); Pilcher v. Gillen, La.App., 314 So.2d 741 (1975), writ refused, La., 320 So.2d 202 (1975). Therefore, we hold that the 1941 transfer is not a simulation.
Both plaintiffs assert an "action en declaration de simulation" against the 1948 transaction. In it, Mattie conveyed her three-fourths naked ownership interest in the 815 acre tract to Louis, her son, and reserved a life usufruct for herself. They contend that the law presumes the transaction a simulated sale since Mattie retained both the usufruct and possession of the property. LSA-C.C. Art. 2480. More specifically, they argue that Louis failed to introduce credible evidence to prove consideration, and therefore, fell short of rebutting this presumption.
Louisiana Civil Code Article 2480 states:
"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that *1377 the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale." (Emphasis supplied.)
When a vendor reserves a usufruct for himself and remains in possession of the property sold, the law presumes the transfer a simulation. A simulation is a feigned or pretended sale clothed with the formalities of a valid sale. There the parties intend the property to remain in the vendor's patrimony and for no consideration to pass. It is a sham and, as a result, an absolute nullity. Succession of Terral, La., 312 So.2d 296 (1975); Succession of Webre, 247 La. 461, 172 So.2d 285 (1965); Spiers v. Davidson, 233 La. 239, 96 So.2d 502 (1957). To rebut this presumption the vendee must prove a good faith transaction resulting in a true alienation of ownership for consideration. Succession of Terral, supra; Dietz v. Dietz, 227 La. 801, 80 So.2d 414 (1955); Succession of Combre, 217 La. 955, 47 So.2d 734 (1950), and the cases cited therein; Holahan v. Guirovich, La.App., 220 So.2d 527 (1969); Succession of Elrod v. Elrod, La.App., 218 So.2d 83 (1969); Litvinoff, "The Action In Declaration Of Simulation In Louisiana Law" in Essay On The Civil Law Of Obligations 139 (J. Dainow ed. 1969), 50 Tul.L.Rev. 428. In sum, the vendee must establish the parties' good faith intention to transfer ownership, the delivery of the property, and an exchange of consideration. See LSA-C.C. Arts. 2439, 2456, 2475, 2477, 2480, and 2549.
In 1929, Claude H. purchased the 815 acre plot. Because of his inability to operate this sizable tract alone, he turned to Louis, a medical student, for assistance. They agreed that the son would receive one-half ownership in the land when it became unencumbered in return for his leaving medical school and helping with the farm. Since the time Louis moved there in 1929, he never received any salary for his work on this land.
In 1930, Louis married Lucille Roge. They immediately moved into the residence on the tract with the elder Culpeppers. Upon their marriage, Lucille gave Louis her inheritance, which was estimated between $3,000 and $5,000. Louis used a portion of this money to reduce the property's mortgage balances.
Claude H. died in 1940. Mattie continued to live with her son and daughter-in-law until her death in 1973. Therefore, at the time of the 1948 transaction, both the vendor and the vendee were in possession of the acreage.
Shortly after her husband's death, Mattie asked Lucille to take over the management of the household affairs. Lucille consented. As mistress of the household, Lucille cooked, cleaned, washed, and cared for the whole family. Her responsibilities also included tending to the personal needs of her mother-in-law. When necessary, she chauffeured, bathed, fed, and generally attended to Mattie. At times Lucille would nurse her at night and attend her in the hospital. This care extended to the time of the mother-in-law's death, a period of more than thirty years.
In 1948, Mattie, then sixty-seven years old, transferred her three-fourths naked ownership interest in the 815 acres to Louis in exchange for $3,500 cash paid and acknowledged and other good and valuable consideration. At trial, Louis admitted that he did not pay his mother the $3,500 in the presence of the notary and witnesses. Instead, in accordance with his mother's wishes, he paid her cash in private on the date of the transaction. Further, he described what the parties intended by "other good and valuable considerations":
"The other good and valuable consideration which she promised which she asked me to promise her that I would take care of her, feed and clothe and tend to her every want for money or anything she needed until she died, which I have done diligently and with no help from anyone else." (Tr. 67.)
Since Claude H.'s death, Mattie, Louis, and Lucille used one bank account for all personal, household, and business transactions. *1378 This account held money generated not only from the 815 acres, but also from Lucille's property inherited from her father, Louis' other tracts, and Louis' income from various sources. The account stood in Mattie's name. In 1948, Mattie closed this account and transferred the balance into an account bearing Louis' name. Both Mrs. Culpeppers were signatories. Mattie, Louis, and Lucille customarily placed money received into and withdrew money needed from this fund. It is from this fund that Louis paid all Mattie's expenses for food, clothing, club dues, medicine, nursing care, hospitalization, and burial.
Louis totally managed the tract after his father's death. He testified that he believed the 1948 conveyance gave him full title, and consequently, at all times thereafter he operated the tract as a full vested owner. He carried the property and crop insurance in his name, paid all insurance premiums, instituted suit concerning crop insurance in his name, paid all taxes, paid off the mortgages, substantially improved and overhauled the tract, farmed it, sold its timber and mineral interests, and generally, superintended its operation. Although he was only the naked owner, he transferred full ownership of portions of the property to his twin sons in 1971. At no time did Mattie complain of Louis' actions or interfere with his method of operation.
Although the trial judge filed no written reasons, it is obvious that he found that Louis L. Culpepper actually paid the $3,500. His findings are entitled to great weight. Roussel v. Colonial Sugars Co., La., 318 So.2d 37 (1975). Louis testified that he drew this money from a cash fund he kept on hand, which fund consisted of Lucille's inheritance and his earnings from outside work. Lucille substantiated the fact that she surrendered her inheritance to Louis to do with as he pleased. To prove that Louis often dealt in cash, his counsel produced evidence that the Internal Revenue Service charged him with numerous penalties for his failure to verify other cash transactions with records. We find no adequate basis in the record for disturbing this finding.
We now turn to the parties' good faith and the delivery of the tract.
The vendor, a sixty-seven year old widow, had two reasons for the alienation: her desire to receive financial assistance from the government,[1] and her eagerness to receive Louis' assurance that he would care for her in her remaining years. As for Louis, the vendee, this transfer consummated the 1929 bargain struck with his father that he would some day receive one-half of the acreage. Louis treated the property as full vested owner after the conveyance and Mattie never objected to his actions. This evidence is uncontradicted. We find that the parties acted in good faith in transferring an interest in the 815 acres from the vendor to the vendee. See Adams v. Trichel, La.App., 304 So.2d 740 (1974).
As previously stated, Mattie and Louis lived in the same house on the tract since 1929. Mattie continued to live there with Louis until her death in 1973. Thus, both before and after the 1948 deed, the vendor and the vendee were in possession of the property. Although she failed to totally disassociate herself from the land, Louis had actual possession. He completely managed and operated the property. Lucille, his wife, ran all the affairs of the household. At no time after 1948 had Mattie exercised any acts of ownership. That the sixty-seven year old widow remained with her son after the sale is insufficient under the circumstances to negate an actual delivery. Accordingly, we deem delivery accomplished in this instance. See Joiner v. Ruark, 174 La. 615, 141 So. 76 (1932); Succession of Dornier, La.App., 240 So.2d 579 (1970); Succession of Rolling, La.App., 127 So.2d 292 (1961); 50 Tul.L.Rev. 428, n. 21.
We conclude that the 1948 transfer is a valid sale.
*1379 The forced heirs alternatively assert that the conveyance is a donation in disguise. They contend that the vendee paid the vendor less than one-fourth of the property value transferred. LSA-C.C. Art. 2444. Louisiana Civil Code Article 2444 provides:
"The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."
In the 1948 warranty deed, Mattie alienated her three-fourths naked ownership interest in the acreage. As she was then sixty-seven years old and had a life expectancy of ten years, the full naked ownership interest was .558395 of the tract's value. LSA-R.S. 47:2405. The plaintiffs' real estate appraiser valued the property at $43.26 per acre as of 1948. From this total amount he subtracted $1,000 because a portion of the land was substandard. Plaintiffs' Exhibit 9. We conclude that the land's 1948 value was $34,256.90. Therefore, the tract's full naked ownership interest was worth $19,128.88. As Mattie owned and conveyed only three-fourths of this interest, the value of the interest transferred was $14,346.66. One-fourth of that value is $3,586.67.
For this transaction to escape classification as a donation in disguise, Louis' consideration must equal or exceed $3,586.67. Since we have determined that Louis paid Mattie $3,500 in cash, the issue is whether the value of Louis' "other good and valuable considerations" equals or exceeds $86.67.
The plaintiffs correctly allege that as usufructuary of the property, Mattie owned all fruits it produced. LSA-C.C. Arts. 544 et seq. Hence, any money generated from these acres that Louis used to care for her cannot form the basis of his consideration.
However, they improperly urge that Louisiana Civil Code Article 229 imposed a legal obligation upon Louis to maintain his mother, and thus, any personal services he rendered may not be included in the calculation of his consideration. By its very terms this article so obligates a child only if the parent is in need. Muse v. Muse, 215 La. 238, 40 So.2d 21 (1949); Steib v. Owens, 190 La. 517, 182 So. 660 (1938). Mattie was never needy or impecunious. She was the usufructuary of a 815-acre plot which realized funds from mineral rights and leases, crops, timber, lumber, farming, raising livestock, and rented houses. In addition, she was the beneficiary of a railroad pension.
The jurisprudence interpreting Article 229 holds all services rendered by a child to a parent not in a penurious condition compensable when the parent expressly or impliedly agreed to compensate the child. Succession of Francke, 219 La. 228, 52 So.2d 855 (1951); Muse v. Muse, supra. Louis' promise to care for all his mother's needs for the remainder of her life was part of his consideration for the conveyance of her interest in the land. Therefore, as Mattie agreed to reimburse Louis for these personal services, the value of such services is properly used in computing his consideration. See LSA-C.C. Arts. 1523 et seq.
We readily conclude, as did the Court of Appeal, that the value of these services from 1948 to 1973, when the mother died, exceeded many times the critical differential of $86.67. Bash v. Sims, La.App., 210 So.2d 180 (1968) and the cases cited therein; Kinney v. Kinney, La.App., 150 So.2d 671 (1963); Succession of Viola, La.App., 138 So.2d 613 (1962).
We hold that the 1948 transaction is not a donation in disguise.
The plaintiffs next assert that the transfer is a nullity under Louisiana Civil Code Articles 1497 and 1533.
Article 1497 provides:
"The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for *1380 subsistence; if he does not do it, the donation is null for the whole."
Article 1533 provided:[2]
"The donor is permitted to dispose, for the advantage of any other person, of the enjoyment or usufruct of the immovable property given, but can not reserve it for himself." (Emphasis supplied.)
These articles apply only to purely gratuitous donations. LSA-C.C. Art. 1526. Succession of Dopier, 40 La.Ann. 848, 6 So. 106 (1888); Estate of Richard v. Richard, La.App., 321 So.2d 375 (1975); Fenger v. Cagnolatti, La.App., 292 So.2d 901 (1974). As we have already determined that the transfer in question is a valid sale, these articles are inapplicable.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents.
TATE, Justice, dissenting.
I respectfully dissent, for the reasons assigned by the dissenting opinion in the Court of Appeal, 337 So.2d 226, 233.
NOTES
[1] The trial judge ruled that Mrs. Culpepper's declaration to one of the plaintiffs that the conveyance was to qualify her for welfare assistance was inadmissible. We assume that it is admissible and consider it.
[2] The Legislature amended this article in 1974. However, this version was in effect in 1948, and therefore, applies.