385 So.2d 593 (1980)
Lemindia Maples HALL, Plaintiff-Appellant,
v.
Mitchell ALLRED et al., Defendants-Appellees.
No. 7565.
Court of Appeal of Louisiana, Third Circuit.
June 5, 1980.
Rehearing Denied July 16, 1980.
*594 Lauve & Hill, Lewis O. Lauve, Alexandria, for plaintiff-appellant.
*595 Ward, Steinman & Karst, C. Edward Karst, Alexandria, for defendants-appellees.
Before FORET, SWIFT and STOKER, JJ.
FORET, Judge.
Our learned brother in the trial court has favored us with extensive reasons for judgment. We agree with his factual findings and legal conclusions flowing therefrom, and we take the liberty of quoting same:
"Plaintiff Lemindia Maples Hall brings this action against defendants Mitchell L. Allred and her former husband, Jerry W. Hall, to set aside a sale of immovable property. It is plaintiff's position that the sale by defendant Hall to defendant Allred should be declared null as a simulation; or in the first alternative, that the sale should be rescinded under LSA-C.C. 1861 on grounds of lesion; or, in the second alternative, that, if valid, the sale was a fraudulent act designed to deprive plaintiff of her right to one-half interest in community property.
"Defendants take the position that this was a valid sale for adequate consideration with no intent to defraud.
"After trial on the matter, the Court makes the following finding of fact.
"On December 15, 1971, plaintiff and defendant J. W. Hall, who were then married, acquired Lot 19 of Circle B Subdivision in Rapides Parish, Louisiana, from defendant Hall's uncle, defendant M.L. Allred (J-1). Consideration for transfer of the property, shown to have a reasonable estimate of value in the amount of $20,500.00 (D-1), was the assumption of the balance due on two mortgages on the property. The first mortgage was from M. L. Allred to the Rapides Bank and Trust Company, dated September 12, 1958, in the original sum of $16,400.00, with a balance due of $12,100.24. The second mortgage was from M. L. Allred to Associates Financial Services, Inc., dated December 15, 1971, in the principle sum of $4,000.00. The property was sold with the understanding that, should the Halls no longer desire to keep the property, defendant Allred would be given a first right of purchase.
"The Halls lived on the property until late 1972 when defendant Hall, a member of the United States Air Force, was transferred and the family moved to Japan. Defendant Allred agreed to supervise the property during their absence. After a brief occupancy by one or more tenants, the property was finally rented in the spring of 1973 to the present tenant, Mrs. Onie Mae Vickers. Rent of $135.00 per month was paid directly to Allred, who paid the $103.50 first mortgage note and retained the balance. When payment on the second mortgage was not timely, Allred made a $1,000.00 payment from his own funds. Allred also performed certain repairs at his own expense with the assistance of his family.
"When the Halls returned to the United States in 1973, Hall was stationed in Little Rock, Arkansas. At this time, the tenant began making rental payments directly to the Halls. Plaintiff paid the increased $117.50 note on the first mortgage. The balance of the second mortgage, $3,000.00, was paid with money borrowed from defendant Hall's mother in January, 1975 (D-2). While residing in Arkansas, defendant Hall and the children made regular trips to Louisiana for the purpose of visiting the Allreds. On at least two occasions, Hall performed repairs. Otherwise, Allred continued to respond to calls from the tenant.
"In May of 1977, plaintiff filed suit in Arkansas for divorce. The parties reconciled in June and the suit was dropped. On July 8, 1977, defendant Hall made a trip to Louisiana for the purpose of bringing the Hall children to visit the Allreds and to deliver household goods for free storage. While in Louisiana, Hall made several transfers of property on July 12 and 14, 1977.
"On July 12, 1977, Hall transferred the subject property back to Allred. Consideration consisted of a reassumption of the first mortgage, having a balance due of $9,168.50 (P-1) and, in addition, "all past due and *596 unpaid obligations" (J-2). From the time of the sale to April, 1979, defendant Hall continued to receive rent payments in the amount of $165.00 and paid the increased first mortgage note of $131.50 (P-L), retaining the balance. Defendant Allred began receiving rent payments in April, 1979, when advised to do so by his attorney. Plaintiff learned of the sale when she called the Clerk of Court's office in Alexandria.
"On July 14, 1977, Hall transferred to his father, who lives in Alabama, a bass boat and a truck for no consideration. Hall retained possession of the truck.
"On July 13, 1977, plaintiff again filed suit in Arkansas for divorce, which was granted on May 18, 1978.
"ISSUES:
The issues to be resolved are:
1. was the sale on July 12, 1977, a simulation;
2. if the sale was valid, does plaintiff have a right to have the sale rescinded on grounds of lesion;
3. if the sale was valid, was it performed in fraud of plaintiff's rights; and
4. if the sale was in fraud of plaintiff's rights, what was her actual loss?
"SIMULATION:
A simulation is a feigned or pretended sale clothed with the formalities of a valid sale. In order to determine whether or not a sale is simulated, the Court must determine whether the parties acted in good faith, whether there was an actual intention to transfer title and whether any consideration was given for the transfer. Phillips v. Nereaux, 357 So.2d 813 (1st Cir., 1978) and 361 So.2d 228 (1st Cir., 1978) on rehearing. A presumption of simulation arises when the plaintiff produces facts casting serious doubts on the validity of the transaction, LSA-C.C. Art. 2480. Once the presumption arises, the burden shifts to the defendant to prove the validity of the transaction. Smith v. Smith, 239 La.2d 688, 119 So.2d 827 (1960); Ingram v. Freeman, 326 So.2d 565 (3rd Cir., 1976), writs den. 329 So.2d 755 (1976).
"However, a transaction will not be set aside as a simulation if any consideration, no matter how small, supports the transaction. Russell v. Culpepper, 344 So.2d 1372 (1977), reh. den. Phillips v. Nereaux, supra.
"Applying these principles to the above facts, the Court finds that the sale was valid and not a simulation. Although plaintiff has presented sufficient facts to give rise to the presumption of simulation, defendants have borne their burden of proving that there was both consideration and an intent to transfer ownership.
"Reassumption of the first mortgage was sufficient consideration to validate the sale. Russell v. Culpepper, supra. The bank was informed of the reassumption and the act of sale executed and recorded. While the fact that Hall continued to receive rent and pay the note casts doubt on the reality of the reassumption, the Court accepts the defendants' explanation that this arrangement was continued as a convenient way for Allred to assist his nephew, Hall, in a time of financial difficulty. In the case of these individuals, the arrangement was not unusual. When Hall was in Japan, the parties had a similar arrangement also at variance with true ownership. Furthermore, Hall's financial difficulties stemmed from extensive credit purchases as well as his marital problems. Based on the proven relationship between the defendants, as well as their past dealings with each other, the Court believes that Allred wished to assist Hall financially by allowing him to retain the balance of the rent after payment of the note.
"Further consideration for the sale was the discharge of past debts owed by the Halls to Allred. There can be no doubt that Allred did perform services related to supervision and repair of the property and he paid for painting, plumbing, and roofing supplies. Even without evidence of exact amounts, the Court can reasonably conclude that the total of these expenditures exceeded the balance of rent retained. He also *597 paid $1,000.00 on the second mortgage note. While defendants admitted that Allred was not pressing for payment, the debt was still owed. Considering Hall's financial situation, reconveyance may have been the only means of satisfying debts related to the property and the parties made their agreement accordingly.
"The defendants have also proved an intent to transfer ownership. This property was formerly the Allred family home and was sold to the Halls at less than market value with the expectation that it would be their family home upon retirement. Hall testified to his agreement with Allred that, if the Halls did not retire to Alexandria, Louisiana, Allred would be allowed the first opportunity to repurchase the property. The Court is convinced that Hall felt obligated to honor this agreement and did not intend to sell the property to anyone else. Hall testified that, at the time of the sale, he did not think his wife would ever move back to Louisiana. He also stated that he feared possible bankruptcy. For these reasons, he reconveyed the property to assure Allred's ownership. Whether or not Hall had additional motives will be discussed below.
"LESION:
Plaintiff has argued in the alternative for rescission of the sale on grounds of lesion under LSA-C.C. 1861. Prior to trial, defendant Allred's attorney brought an Exception of No Right of Action under this article, which was referred to the merits. The Court agrees that rescission is not available as a remedy for this plaintiff, Thigpen v. Thigpen, 231 La. 206, 91 So.2d 12 (1956), and this contention is dismissed.
"INTENT TO DEFRAUD:
Having found a valid sale that cannot be rescinded, plaintiff's only remedy is as enunciated in the case of Thigpen v. Thigpen, supra. Under LSA-C.C. 2404[1], a wife has a right of action "... for the losses resulting to her by reason of the husband's sales of community property during the marriage disposed of by fraud and with intent to injure her. The right thus afforded is conditioned upon two elements, (1) the sale of property conceived with the intent to reduce the wife's community interest, and (2) actual injury resulting therefrom." Thigpen v. Thigpen, supra, [91 So.2d] at page 20.
"In light of the several transactions occurring at the same time, the Court has little doubt that defendant Hall intended to deprive plaintiff of her community interest by disposing of property at a time when dissolution of the community by divorce was imminent. In the case of the immovable property, Hall was equally motivated by the desire to return the property to Allred, but he did so with the intent to injure his wife's interest. This he is not allowed to do. Hence, it remains only to determine whether she has suffered a loss by reason of this sale.
"ACTUAL LOSS:
The Court in Thigpen v. Thigpen stated that a wife's action was for "actual injury" resulting from the sale. The Court then set out a measure of damages using the difference between the consideration given and the market value of the property conveyed. As in other cases involving deprivation of property interests, such as lesion and expropriation, the Thigpen Court equated "market value" with fair market value as shown by appraisers. Accordingly, plaintiff herein presented evidence that the subject property had an appraised value of $28,000.00 (P2) at the time of the sale.
"This Court finds, however, that it cannot justly apply the above measure of damages in this case. When the property was acquired in 1971 by the community existing between the Halls, fair market value played no part in determining the purchase price. In fact, Allred sold to the Halls for the same price he paid in 1958. No community funds were used to discharge the second *598 mortgage and little, if any, community funds were expended on maintenance of the property. Clearly, the Halls got a bargain and were able to enjoy an almost care-free ownership solely because this was a family matter and not an arms-length transaction.
"Therefore, the resale of the same property to the original owner on the same reassumption terms is not necessarily an injury to plaintiff's community interest. A higher purchase price could have been obtained from an objective buyer, but there is no reason to believe that, under other circumstances, the property would ever have been sold to another buyer. Nor is there reason to believe that the purchase price would have been more than a "bargain" price. To apply the usual measure of damages would create something of a windfall profit that would not have been obtained but for the disintegration of family relationships.
"Considering the unusual factors in this case, the Court finds the jurisprudential guideposts inadequate to determine the actual injury sustained by Mrs. Hall. Therefore, in order to do justice between the parties, the Court will measure actual damages based upon the difference between the fair market value of the property in 1971 (D-1) [$20,500] and the fair market value in 1977 (P-2) [$28,000]. This amount is $7,500.00. Plaintiff is entitled to one-half, or $3,750.00.
"In accordance with the above, plaintiff's suit against defendant Allred is dismissed. Plaintiff's claim against Hall is granted and judgment rendered in her favor for $3,750.00. The appraisers fee is fixed at $100.00 and taxed as costs. Plaintiff and defendant are to share all costs."
Plaintiff, on appeal, makes much of the fact that the plaintiff was ordered to share in the court costs. We see no abuse of discretion in the assessment of costs where the trial court has much discretion in assessing same.[2]
Accordingly, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against the plaintiff.
AFFIRMED.
NOTES
[1] Footnote by Court of Appeal

Articles 2377-2431 were repealed by Acts 1978, No. 627 § 6, eff. Jan. 1, 1980; Acts 1979, No. 709, § 1, eff. Jan. 1, 1980.
[2] Although he did not prevail on this appeal, this writer is moved to compliment plaintiff-appellant's counsel on the excellence of his brief filed in this Court.