# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-135


WALTER WADE THORNTON

VERSUS

TAMARA M. WOLF, ET AL.


************

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF CATAHOULA, NO. 23,996,
HONORABLE LEO BOOTHE, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Michael G. Sullivan, Billy Howard Ezell, and J. David Painter, Judges.


**AFFIRMED.**

**Marshall Leon Sanson**
**Attorney at Law**
**505 Pine Street**
**Monroe, Louisiana  71201**
**(318) 388-1234**
**Counsel for Defendant/Appellee:**
> **Tamara M. Wolf**
> **Sheryl Ladee Ford**
> **Scotty Louis Ford**

**Paul Howard Benoist**
**Attorney at Law**
**401 Lynn Street, Suite A**
**Vidalia, Louisiana  71373**
**(318) 336-7060**
**Counsel for Plaintiff/Appellant:**
> **Walter Wade Thornton**

SULLIVAN, Judge.

Walter Thornton appeals the trial court's refusal to declare an Assumption Deed a simulation or revoke the effects of the Deed. We affirm.

### Facts

On August 13, 2004, Mr. Thornton was awarded a judgment against his ex-wife, Tamara Wolf, in the amount of $120,000.00 by a Mississippi court. On September 27, 2004, he filed a copy of that judgment in the mortgage records of Catahoula Parish and filed suit to have the judgment recognized as enforceable in Louisiana. Judgment recognizing the Mississippi judgment and making it executory was granted January 25, 2005.

Pursuant to a Cash Sale, Ms. Wolf had purchased real property (the property) in Catahoula Parish on March 15, 2002. She borrowed money to finance the purchase of the property and, in connection therewith, executed a promissory note and mortgage to evidence her indebtedness and secure repayment of the promissory note. On August 28, 2004, Ms. Wolf transferred title to the property to Sheryl and Scotty Ford, her sister and brother-in-law, by means of an Assumption Deed.

In March 2006,[1] Mr. Thornton filed suit against Ms. Wolf and the Fords, alleging that the Assumption Deed was fraudulent and should be revoked. He urged that the purpose of the Assumption Deed was to deprive him of the ability to enforce his judgment against Ms. Wolf. After a bench trial, the trial court concluded that the Assumption Deed was not a sham and should not be revoked. Mr. Thornton appeals.

### Standard of Review

Findings of fact are subject to the manifest error or clearly wrong standard of review. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993).

---

[1] Ms. Wolf filed for bankruptcy protection in 2005; her case was dismissed on January 26, 2006.

Legal errors are subject to the *de novo* standard of review. *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731.

### *Discussion*

#### *Simulation*

Mr. Thornton contends that the Assumption Deed was a sham or simulation employed by Ms. Wolf and the Fords to defraud him of his right to enforce his judicial mortgage against the property.

Article 2025 of the Louisiana Civil Code defines "simulation" as a contract which "by mutual agreement . . . does not express the true intent of the parties." A transaction is a simulation if "the parties intend the property to remain in the vendor's patrimony and for no consideration to pass." *Russell v. Culpepper*, 344 So.2d 1372, 1377 (La.1977). When the vendee proves good faith by the parties, delivery of the property, and an exchange of consideration, he has established that the transaction is not a simulation. *Id.* Assumption of a debt is valid consideration for the transfer of property. *Id. See also, Thompson v. Woods*, 525 So.2d 174 (La.App. 3 Cir. 1988).

The stated consideration in the Assumption Deed was the Fords' assumption of Ms. Wolf's indebtedness of $53,000.00. Mrs. Ford testified that she and her husband wanted to purchase the property in 2002 but could not obtain the financing to do so. She further testified that they had lived on the property and paid all the mortgage payments since the 2002 Cash Sale. In Responses to Requests for Admissions propounded by Mr. Thornton, Ms. Wolf corroborated Mrs. Ford's testimony.

Mr. Thornton objected to any testimony regarding the facts surrounding the Cash Sale, but the trial court allowed Mrs. Ford's testimony on the issue.

2

Mr. Thornton urges on appeal that Mrs. Ford should not have been allowed to testify concerning the intent of the parties to the 2002 Cash Sale, citing La.Civ.Code art. 1848, which prohibits the admission of testimonial evidence to negate or vary the contents of an authentic act.

Mrs. Ford's testimony did vary information stated in the Cash Sale, and a review of the trial court's Reasons for Judgment reveals that it relied on that testimony to deny the relief sought by Mr. Thornton. However, under the facts of this case, it was not error for the trial court to allow this testimony.

To successfully defend Mr. Thornton's claim that the Assumption Deed was a simulation, the Fords had to prove that the Assumption Deed was executed in good faith. *Russell*, 344 So.2d 1372. Mrs. Ford's testimony varied from the written terms of the Cash Sale, but it established that the Assumption Deed was executed in good faith. She and her husband had made all the payments on the property from the date of the Cash Sale, but the title was not in their name. Her testimony proved that the Assumption Deed was executed to put the property in the name of the true owners, not to transfer property bought and paid for by Ms. Wolf to defeat Mr. Thornton's claims.

Mrs. Ford's testimony concerning the Cash Sale and the Assumption Deed defended the legitimacy of the Assumption Deed, and the trial court did not err in allowing her testimony on these issues. *Chenevert v. Lemoine*, 161 So.2d 85 (La.App. 3 Cir.), *writ denied*, 162 So.2d 572, 245 La. 1076 (1964).

We find no error with the trial court's determination that the Assumption Deed was not a simulation or sham but a valid transfer.

3

***Revocatory Action***

Alternatively, Mr. Thornton argues that he is entitled to revoke the effects of the Assumption Deed. Pointing to his judgment and Ms. Wolf's Responses to his Requests for Admissions in which she admitted that her debts exceeded her assets when she executed the Assumption Deed, Mr. Thornton urges that the transfer to the Fords increased Ms. Wolf's insolvency and should be revoked.

Louisiana Civil Code Article 2036 provides for the revocation of a sale, stating: "An obligee has the right to annul an act of the obligor . . . made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." "An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets." La.Civ.Code art. 2037.

Mr. Thornton introduced the following evidence at the trial: 1) copies of the Cash Sale and mortgage executed by Ms. Wolf when she purchased the property; 2) a copy of the Assumption Deed; 2) copies of documents establishing Ms. Wolf's indebtedness to him; 3) a copy of a Mortgage Account Statement detailing the mortgage obligations on the property dated February 18, 2005; 4) an appraisal of the property dated March 9, 2005; and 5) a statement issued by the Tax Assessor for Catahoula Parish dated January 18, 2005. The Fords introduced Ms. Wolf's Responses to Requests for Admissions.

This documentary evidence established that Ms. Wolf purchased the property for $60,000.00 in 2002 and that the Fords assumed her obligations under the terms of the promissory note and mortgage. The promissory note and mortgage obligated Ms. Wolf to repay the principal amount of $54,000.00, together with interest at the rate of 5.375% per annum and escrow items which include insurance premiums and

4

taxes, over a period of thirty years. When the Fords executed the Assumption Deed, these obligations totaled more than $119,500.00, which represents the principal amount of $53,000.00 stated in the Assumption Deed, plus $49,000.00 in interest (5.375% per annum on $53,000.00 for 28.5 years) and $17,500.00[2] in escrow items.

Pursuant to La.Civ.Code art. 2036, Mr. Thornton had to prove that the transfer of the property caused or increased Ms. Wolf's insolvency. Ms. Wolf admitted in her Responses to Requests for Admissions that she was insolvent before she executed the Assumption Deed; therefore, Mr. Thornton had to prove that the transfer increased her insolvency.

Mr. Thornton introduced the appraisal and tax assessment to satisfy this element of his burden of proof. The appraisal estimated the fair market value of the property to be $55,900.00, while the tax assessment assessed the property at $73,500.00. If only the principal obligation assumed by the Fords is considered, it would appear that Mr. Thornton satisfied his burden of proof because the value of the property exceeded the obligations assumed by the Fords. In reality, the Assumption Deed reduced Ms. Wolf's insolvency because the Fords assumed obligations which greatly exceed the value of the property. Accordingly, Mr. Thornton did not prove that the Assumption Deed increased Ms. Wolf's insolvency.

Mr. Thornton urges that Ms. Wolf's mortgage prohibited transfer of the property and assumption of the debt. This argument has no merit. Mr. Thornton has no standing to make this argument because he was not a party to the promissory note or the mortgage. *See Rowan v. Town of Arnaudville*, 02-882 (La.App. 3 Cir.

---

[2]A Mortgage Account Statement issued by the holder of the promissory note on February 18, 2005, was included in documents introduced into evidence by Mr. Thornton. According to that statement, the escrow items total $52.59 per month. Assuming the stated amount for these items remain constant for the remaining term of the promissory note and mortgage, the Assumption Deed obligates the Fords to pay $17,500.00 in escrow items.

12/11/02), 832 So.2d 1185.  Further, Ms. Wolf stated in her Responses to Requests for Admissions that she had notified the current holder of the promissory note of the assumption by the Fords, and Mrs. Ford testified that the note holder was pleased with their payment history.

### *Appellate Record Costs*

Mr. Thornton appeals the trial court's denial of his request to reduce the $585.00 fee charged by the district court's clerk of court for copies of the 117 pages of exhibits for the appellate record, urging that the fee is excessive and contrary to Louisiana's policy of favoring appeals.  Louisiana Revised Statutes 13:841(A)(10) provides district court clerks "may be entitled to demand and receive fees of office, which fees may be less than, but shall not exceed . . . (10) Appeals (per original document page) complete preparation of all copies and volumes, five dollars."

The $5.00 fee encompasses making copies and preparing the appellate record, not just making copies as argued by Mr. Thornton.  Appeals are favored; however, the clerk of court was within its authority to charge this fee.  Mr. Thornton has not cited, and we have not found, any provision of law or jurisprudence which would allow us to reduce this fee.  Accordingly, we find no error with the trial court's denial of Mr. Thornton's motion to reduce the clerk of court's $5.00 fee for exhibits.

### *Disposition*

For the reasons stated herein, the judgment of the trial court is affirmed.  All costs of this appeal are to assessed to Mr. Thornton.

**AFFIRMED.**

6